UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

CONRAD MARHONE,

                    Plaintiff,

            -against-

CO J. CASSEL, CORRECTION OFFICER, SING
SING CF; CO WRIGHT, CORRECTION OFFICER,
SING SING CF; CAPTAIN LAPORTO,
CORRECTION OFFICER AT SING SING CF; DSS
KEYSOR, DEPUTY SUPERINTENDENT FOR
SECURITY, SING SING CF; SUPERINTENDENT
MICHAEL CAPRA, SING SING CF;
SUPERINTENDENT JOSEPH SMITH,
SHAWANGUNK CF; PLANT SUPERINTENDENT
RON FARAH, SHAWANGUNK CF; ALBERT
PRACK, N.Y.S. DEPT. OF CORRECTIONS,
DIRECTOR OF SPECIAL HOUSING AND INMATE
DISCIPLINE; SUPERINTENDENT DAVID ROCK,
UPSTATE CF,

                    Defendants.

16-CV-4733 (NSR)

OPINION & ORDER

NELSON S. ROMÁN, United States District Judge

    Plaintiff Conrad Marhone, proceeding *pro se*, commenced this action on June 21, 2016

against Defendants Cassel, Wright, Laporto, Keysor, Capra, Smith, Farah, Prack, and Rock,

current or former employees of the New York State Department of Corrections and Community

Supervision ("DOCCS"), alleging violations of 42 U.S.C. § 1983. Presently before this Court is a

motion to dismiss Plaintiff's amended complaint pursuant to the Federal Rules of Civil Procedure

Rule 12(b)(6) for failure to state a claim upon which relief can be granted. (Memorandum of Law

in Support of Defendants' Motion to Dismiss ("Defs.' Mot. to Dismiss")) For the reasons set forth

below, Defendants' motion is GRANTED in part and DENIED in part.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 8 | 31 | 2018

# I.    BACKGROUND

The following facts are taken from the Plaintiff's amended complaint and exhibits, filed on November 10, 2016 (the "Amended Complaint") and are accepted as true for the purposes of this motion.

On June 20, 2013, at approximately 11:55 AM, Defendant Cassel observed Plaintiff sitting at a table in the mess hall, gesturing toward inmates entering the mess hall to be quiet, and "it appeared that the inmates complied." (Am. Compl. ¶ 38, Ex. A, ECF 19.) Defendant Cassel filed a misbehavior report based on this incident based on a violation of Rule 104.12, "Demonstration."[1] (*Id.*)

Leading up to the June 20, 2013 event, Plaintiff learned that one of the two charges in his misbehavior report from an incident at another facility[2] had been annulled by the New York Supreme Court on June 13, 2013. (*Id.* ¶ 26, Ex. A.) Plaintiff "was repeatedly outspoken" about this decision and believes that Defendants Cassel, Wright, Laporto, Keysor, and Capra were aware of the decision and understood it to be "a sign that [Plaintiff], an obvious litigant of the First Amendment, was participating in a demonstration [in the June 20, 2013 incident], thereby

---

[1] Rule 104.12 states that "[a]n inmate shall not lead, organize, participate, or urge other inmates to participate, in a work-stoppage, sit-in, lock-in, or other actions which may be detrimental to the order of facility." N.Y. Comp. Codes R. & Regs. tit. 7, § 270.2(B)(5)(iii).

[2] When Plaintiff was incarcerated in the Eastern Correctional Facility ("Eastern"), he was Secretary for the Inmate Liaison Committee ("ILC"), and he participated in the ICL's resignation on May 3, 2010 in response to the "recalcitrant administration's disregard of the ILC's complaints." (Am. Compl. ¶¶ 18–20.) As a result, he was transferred from Eastern to Clinton Correctional Facility ("Clinton"), where he was charged in a misbehavior report with violating prison rules prohibiting stalking and harassment due to an "inflammatory" letter he sent a correction officer. (*Id.* ¶¶ 21–22, Ex. A.) Defendant received several negative comments in his personal records while at Eastern and Clinton from DOCCS employees who are not named in this action, one of whom Plaintiff states is a close colleague of Defendants Laporto and Keysor. (*Id.* ¶¶ 23–25.) Plaintiff alleges that these negative comments, combined with the relationship between the Defendants Laporto, Keysor, and the other DOCCS employee caused Plaintiff to be "pegged as a rabble-rouser" by the time he was transferred to the Sing Sing Correctional Facility ("Sing Sing") some time before June 13, 2018. (*Id.* ¶ 25.)

urging their adverse action against him." (*Id.* ¶¶ 34–35.) Plaintiff claims that the Defendants'

presumed awareness of his role in a previous prison demonstration and the June 13, 2013

decision, in addition to interactions the Plaintiff had with Defendant Wright,[3] caused the

Defendants to be biased toward Plaintiff and to assume that his actions on June 20, 2013 were

part of an organized protest.

Plaintiff states that the June 21, 2013 misbehavior report against Plaintiff was part of an

effort by Defendants Keysor, Laporto, and Wright, approved by Defendant Capra, to reassert

control over Sing Sing by seeking out inmates to send to the Special Housing Unit ("SHU"). (*Id.*

¶ 38.) On June 21, 2013, before Plaintiff was placed in SHU, he was brought before Defendant

Laporto and was asked to explain what was going on. Plaintiff stated that he did not know, and

then he was transferred to Shawangunk SHU ("Shawangunk") "in the middle of the night,"

without his personal property. (*Id.* ¶¶ 42–43.) Plaintiff alleges that Defendant Keysor made

arrangements for Plaintiff's transfer to Shawangunk, Defendant Capra authorized the transfer,

and Defendant Smith was aware of "reasons why [Plaintiff] was transferred to his facility" and

"upheld the policy to misuse the [SHU] to advance an unconstitutional agenda."[4] (*Id.* ¶¶ 43, 45–

47.)

On June 26, 2013, Plaintiff's hearing for the June 21, 2013 misbehavior report began

before the hearing officer, Defendant Farah. (*Id.* ¶ 48.) At this hearing, Plaintiff argued that the

---

[3] Plaintiff states that he informed Defendant Wright, his supervisor, that he would not work on his birthday, February 13. The year of this interaction is not specified. (*Id.* ¶ 31.) Defendant Wright responded that he would no longer pay Plaintiff and that he would eventually get Plaintiff "out of Sing Sing." (*Id.*) "Defendant Wright's disdain culminated when he encouraged the conclusory charges that would place [Plaintiff] in SHU and thereby guarantee his transfer out of the facility," and Plaintiff saw Defendant Wright speak with Defendants Cassel and Laporto, making "gestures suggesting that [Plaintiff] was the subject of their attention." (*Id.* ¶¶ 32–33.)
[4] On July 24, 2013, the Plaintiff sent Defendant Smith a request for a discretionary review. Plaintiff states that Defendant Smith "exercised bad faith in supervising the manner disciplinary hearing[s] were conducted." (*Id.* ¶ 79, Ex. J.)

misbehavior report, among other defects, failed to describe how Plaintiff participated in a demonstration on June 21, 2013. (*Id.* ¶ 51.) According to Plaintiff, Defendant Farah was biased against the Plaintiff and "intentionally denied him due process at the disciplinary hearing." (*Id.* ¶¶ 52, 56.) On July 24, 2013 ("July Decision"), Defendant Farah found Plaintiff guilty of violating Rule 104.12 and sentenced him to approximately 120 days in SHU. (*Id.* ¶ 54.) Plaintiff states that Defendant Farrah acted to maintain a policy "where SHU confinement is overused as a device for modern torture and retaliation." (*Id.* ¶ 59.)

Around August 2013, during his disciplinary confinement, Plaintiff was transferred from Shawangunk to the Upstate Correctional Facility ("Upstate"), where Defendant Rock was Superintendent. (*Id.* ¶¶ 69, 80.) As part of that process, he was shackled in a holding cell for over seven hours. (*Id.* ¶ 80.)

Plaintiff "suffered greatly in SHU at both Shawangunk and Upstate."[5] (*Id.* ¶ 73.) At Shawangunk, Plaintiff "suffer[ed] sensory torture" from the "incessant bright lights" and the "constant noise antagonism" due to his proximity to an external door.[6] (*Id.* ¶ 75.) Because Plaintiff's personal property was not forwarded to him from Sing Sing, Plaintiff was forced to sleep on used bedding, and he did not have his personal food or his books and magazines which

---

[5] In Shawangunk, Plaintiff did not have a desk, was limited to twenty sheets of paper, only received five one-ounce soap bars per week, had limited shower access, had very limited sunlight or fresh air, had no phone or television, and had "zero human contact." (*Id.* ¶ 74.) Plaintiff also states that he was "forced to live and interact with inmates who suffered from various mental disorders." (*Id.* ¶ 78.) Additionally, because of his confinement, the Plaintiff only had meager access to the law library and was unable to attend religious services or participate in educational or vocational programs. (*Id.* ¶ 74.) The Plaintiff does not appear to be making a claim about these conditions and he does not include them in his causes of action. Even assuming that the Plaintiff intends to state a claim for these conditions, he failed to exhaust his remedies for these claims. (See Defs.' Mot. to Dismiss pp. 17–19.) *See infra* Part III(A).

[6] The Plaintiff filed a grievance related to these conditions which the DOCCS, after a "full hearing of the facts and circumstances," denied. The Plaintiff was in control of the lights in his cell and the remaining lights were gallery lights, essential for visibility and security. The DOCCS also stated that "a limited number of staff" were required to use the door and that this was unavoidable. (*Id.* ¶ 75, Ex. H.)

led to a lack of mental stimulation. (*Id.* ¶¶ 74, 77.) Plaintiff had inadequate clothing and no coat.[7] (*Id.* ¶ 76.) Plaintiff also alleges that Defendant Rock "withheld his religious diet for weeks upon Plaintiff's arrival."[8] (*Id.* ¶ 108.) At the Upstate facility, Plaintiff "endured the same conditions" as existed at Shawangunk.[9] (*Id.* ¶ 82.)

On September 17, 2013, Plaintiff was issued a time-cut, which set Plaintiff's release from SHU for October 15, 2013. (*Id.* ¶ 83, Ex. G.) Defendant Rock revoked the time-cut for Plaintiff's SHU penalty, but Plaintiff does not provide information or supporting documents about the revocation. (*Id.* ¶¶ 71–72, 84, Ex. M.) Plaintiff sent Defendant Rock a "Request for Interview or Information" form noting that he felt he was being held past his release date, and he received a response informing him that his complaint was not properly submitted. (*Id.* Ex. M.) Plaintiff states that Defendant Rock was also aware of the "policy to overuse SHU and the disciplinary process for retalitative [sic] means." (*Id.* ¶ 71.)

On September 30, 2013, Plaintiff filed an administrative appeal with Defendant Prack and, after reviewing the July Decision and Plaintiff's arguments, Defendant Prack affirmed the July Decision on October 10, 2013 ("October Appeal"). (*Id.* ¶¶ 60–62, Exs. D & E.) Plaintiff then filed an Article 78 petition in Westchester County.[10] (*Id.* ¶ 64.) Before the court issued an

---

[7] In a letter from Plaintiff dated August 5, 2013, it appears that DOCCS sent the Plaintiff clothes when he requested clothes, and did not send Plaintiff a jacket at that time because the Plaintiff had not yet requested a jacket. (*Id.* ¶ 76, Ex. I.)

[8] The Plaintiff filed a grievance on this issue and the DOCCS responded that the individual responsible for managing the religious meal list had been on vacation when the Plaintiff submitted his meal request on August 12, 2013, and that Plaintiff's name was added to the list on August 21, 2013. (*Id.* Ex. L.)

[9] Additionally, his family had extreme difficulty visiting him Upstate because of the distance from their residence in the New York City area. (*Id.* ¶ 82.) As discussed *supra* note 5, assuming Plaintiff is making a claim, Plaintiff failed to exhaust his remedies for this issue.

[10] In his Article 78 petition, Plaintiff requested the expungement of Defendant Farah's decision and transfer back to Sing Sing. The New York Supreme Court, Third Division, on July 11, 2014, held that Plaintiff's request about Defendant Farah's July 24, 2013 decision was moot because of Defendant Prack's April 24, 2014 order expunging the disciplinary determination. The court also denied his request for transfer, holding that inmates do not have a right to pick their own facilities. (*Id.* ¶ 66, Ex. F.)

opinion on the Article 78 action, on April 24, 2014, Defendant Prack ordered the reversal and expungement of Defendant Farah's July Decision after the Attorney General's office submitted that Defendant Farah's July Decision was not supported by substantial evidence. (*Id.* ¶ 65, Ex. E.) However, by this time, the Plaintiff had completed 120 days in SHU. (*Id.* ¶ 67.)

As a result of his time in SHU, Plaintiff suffers from depression, regular headaches, anger, paranoia, sudden mood swings, and lethargy. (*Id.* ¶ 85.) Plaintiff's personal property from Sing Sing was never returned to him and he was not compensated for the loss. (*Id.* ¶ 90.) Additionally, while Plaintiff was eventually paid his earned wages, which had been withheld by Defendant Wright, Plaintiff did not receive payment for the wages he would have earned had he not been in SHU. (*Id.* ¶¶ 91–92, Ex. Q.) Plaintiff had hoped to take advantage of educational and rehabilitative programs offered at Sing Sing and now no longer has access to those programs because of his transfers to accommodate his disciplinary confinement to SHU. (*Id.* ¶¶ 94, 97.)

## II.  LEGAL STANDARDS

### A.  Motion to Dismiss

To survive a Rule 12(b)(6) motion, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when the factual content pleaded allows a court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679. In considering a 12(b)(6) motion, a court must take all material factual allegations as true and draw reasonable inferences in the non-moving party's favor, but a court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 555) (internal quotation marks

omitted). Nor must a court credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action." *Id.*

Further, a court is generally confined to the facts alleged in the complaint for the purposes of considering a motion to dismiss pursuant to 12(b)(6). *Cortec Indus. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991). A court may, however, consider documents attached to the complaint, statements or documents incorporated into the complaint by reference, matters of which judicial notice may be taken, public records, and documents that the plaintiff either possessed or knew about, and relied upon, in bringing the suit. *See Kleinman v. Elan Corp.*, 706 F.3d 145, 152 (2d Cir. 2013).

Where a plaintiff proceeds *pro se*, the court must construe the complaint liberally and interpret it to "raise the strongest arguments that [it] suggest[s]." *Askew v. Lindsey*, No. 15-CV-7496(KMK), 2016 WL 4992641, at *2 (S.D.N.Y. Sept. 16, 2016) (quoting *Sykes v. Bank of America*, 723 F.3d 399, 403 (2d Cir. 2013)). Yet, "the liberal treatment afforded to *pro se* litigants does not exempt a *pro se* party from compliance with relevant rules of procedural and substantive law." *Id.* (quoting *Bell v. Jendell*, 980 F. Supp. 2d 555, 559 (S.D.N.Y. 2013)).

## B.      42 U.S.C. § 1983 Claims

Section 1983 provides that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured." 42 U.S.C. § 1983.

Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal

statutes that it describes." *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979); *see Patterson v. County of Oneida*, 375 F.3d 206, 225 (2d Cir. 2004). To state a claim under § 1983, a plaintiff must allege "(1) the challenged conduct was attributable to a person who was acting under color of state law and (2) the conduct deprived the plaintiff of a right guaranteed by the U.S. Constitution." *Castilla v. City of New York*, No. 09-CV-5446(SHS), 2013 WL 1803896, at *2 (S.D.N.Y. Apr. 25, 2013); *see Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir. 2010); *Quinn v. Nassau Cty. Police Dep't*, 53 F. Supp. 2d 347, 354 (E.D.N.Y. 1999) (Section 1983 "furnishes a cause of action for the violation of federal rights created by the Constitution.").

Here, Plaintiff alleges that the Defendants violated his First Amendment, Eighth Amendment, and Fourteenth Amendment rights.

C.    **Exhaustion**

The Prison Litigation Reform Act ("PLRA") bars an inmate from bringing a § 1983 action related to prison conditions unless such "administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); *see Williams v. Priatno*, 829 F.3d 118, 121–22 (2d Cir. 2016). Accordingly "the PLRA does not require the exhaustion of all administrative remedies, but only those that are 'available' to the inmate." *Hubbs v. Suffolk Cty. Sheriff's Dep't*, 788 F.3d 54, 59 (2d Cir. 2015). "To be 'available' under the PLRA, a remedy must afford 'the possibility of some relief for the action complained of.' " *Abney v. McGinnis*, 380 F.3d 663, 667 (2d Cir. 2004) (quoting *Booth v. Churner*, 532 U.S. 731, 738 (2001)).

An inmate may exhaust a claim by adhering to the DOCCS grievance procedure. Grievances at DOCCS are governed by the Inmate Grievance Program ("IGP"), which is based on a three-tiered system. *Williams*, 829 F.3d at 119–20. To adjudicate an inmate complaint: "(1) the prisoner files a grievance with the Inmate Grievance Resolution Committee . . . (2) the prisoner

may appeal an adverse decision by the IGRC to the superintendent of the facility, and (3) the prisoner then may appeal an adverse decision by the superintendent to the Central Officer Review Committee ('CORC')." *Barker v. Smith*, No. 16-CV-76(NSR), 2017 WL 3701495, at *3 (S.D.N.Y. Aug. 25, 2017); *see also* N.Y. Comp. Codes. R. & Regs., tit. 7, § 701.7. "[T]he final step in the grievance procedure always remains the appeal to CORC. Thus, only after CORC has reviewed the appeal and rendered a decision are New York's grievance procedures exhausted." *Gardner v. Daddezio*, No. 7-CV-7201(SAS), 2008 WL 4826025, at *2 (S.D.N.Y. Nov. 5, 2008) (footnote omitted).

The procedure for exhaustion of claims related to disciplinary hearings, however, is different. Administrative or disciplinary decisions are non-grievable. N.Y. Comp. Codes. R. & Regs., tit. 7, § 701.3(e)(1)–(2). Therefore, inmates exhaust these decisions through administrative appeals. *Davis v. Barrett*, 576 F.3d 129, 131–32 (2d Cir. 2009); *Barker*, 2017 WL 3701495, at *3; *Davis v. Jackson*, No. 15-CV-5359, 2016 WL 5720811, at *7 (S.D.N.Y. Sept. 30, 2016) ("When an inmate challenges the procedure at a disciplinary hearing that resulted in punishment, he exhausts his administrative remedies by presenting his objections in the administrative appeals process, not by filing a separate grievance instead of or in addition to his ordinary appeal" (quoting *Khalid v. Reda*, No. 00-CV-590, 2003 WL 42145, at *4 (S.D.N.Y. Jan. 23, 2003) (internal quotation marks omitted)). "Where an inmate claims both that there was official misconduct in the events leading up to the disciplinary hearing and that the hearing itself was constitutionally fl[a]wed, he must follow both DOCCS procedures." *Kimbrough v. Fischer*, No. 13-CV-0100, 2014 WL 12684106, at *6 (N.D.N.Y. Sept. 29, 2014). Critical to the exhaustion analysis for claims from disciplinary hearings is whether a plaintiff "pursu[ed] an

appeal of the disciplinary conviction and receiv[ed] a final decision from ... the Commissioner's designee." *Id*.

Exhaustion is an affirmative defense, not a pleading requirement; thus, inmate plaintiffs need not "specially plead or demonstrate exhaustion in their complaints." *Jones v. Bock*, 549 U.S. 199, 216 (2007). Instead, Defendants must demonstrate lack of exhaustion. *Colon v. N.Y.S. Dep't of Corr. & Cmty. Supervision*, No. 15-CV-7432(NSR), 2017 WL 4157372, at *5 (S.D.N.Y. Sept. 15, 2017) (citing *Key v. Toussaint*, 660 F. Supp. 2d 518, 523 (S.D.N.Y. 2009)).

Dismissal on a 12(b)(6) motion for failure to exhaust is permissible where "it is clear on the face of the complaint that the plaintiff did not satisfy the PLRA exhaustion requirement." *Williams v. Priatno*, 829 F.3d 118, 122 (2d Cir. 2016); *see Lee v. O'Harer*, No. 13-CV-1022, 2014 WL 7343997, at *3 (N.D.N.Y. Dec. 23, 2014) ("Dismissal under Rule 12(b)(6) for failure to exhaust is appropriate if such failure is evidenced on the face of the complaint and incorporated documents."); *Parris v. N.Y.S. Dep't Corr. Servs.*, 947 F. Supp. 2d 354, 361 (S.D.N.Y. 2013) (noting that denial of motion is appropriate where a complaint is ambiguous as to exhaustion); *Johnson v. Westchester Cty. Dep't of Corr. Med. Dep't*, No. 10-CV-6309, 2011 WL 2946168, at *2 (S.D.N.Y. July 19, 2011).

Further, on such a motion, where a court is confined to the four corners of the complaint, the documents attached thereto, and information of which it is entitled to take judicial notice, see, e.g., *Kleinman v. Elan Corp.*, 706 F.3d 145, 152 (2d Cir. 2013), a court is only permitted to consider outside documents related to exhaustion and submitted by defendants under limited circumstances. *See Smith v. Miller*, No. 15-CV-9561(NSR), 2017 WL 4838322, at *5 (S.D.N.Y. Oct. 23, 2017) (noting courts can take judicial notice of administrative records in Section 1983 cases in limited circumstances). Those include instances where "the complaint a) was the

standard *pro se* form complaint that has a check-box regarding exhaustion, b) contained allegations clearly stating that the inmate had exhausted his administrative remedies, or c) clearly pointed to the fact that the inmate had, in fact, not exhausted." *Colon v. N.Y.S. Dep't of Corr. & Cmty. Supervision*, No. 15-CV-7432(NSR), 2017 WL 4157372, at *5 (S.D.N.Y. Sept. 15, 2017).

III.    **DISCUSSION**

A.    **Exhaustion**

Courts may only consider outside documents in conducting an exhaustion analysis for a motion to dismiss if, among two other options, the complaint clearly states that the inmate exhausted his administrative remedies. *Colon v. N.Y.S. Dep't of Corr. & Cmty. Supervision*, No. 15-CV-7432(NSR), 2017 WL 4157372, at *5 (S.D.N.Y. Sept. 15, 2017). Here, Plaintiff states that he has "exhausted his available administrative remedies." (*Id.* ¶¶ 60, 99.)  Therefore, the Court may property consider the documentary evidence provided by the Defendants.

Defendants argue that Plaintiff failed to exhaust his administrative remedies, particularly those for violations of the First Amendment, prior to bringing this action. (Defs.' Mot. to Dismiss pp. 16–17.)  More specifically, Defendants claim that Plaintiff failed to pursue available administrative remedies by not appealing to the CORC. (Defs.' Mot. to Dismiss p. 19.); *see* 42 U.S.C. § 1997e(a).

To support this assertion, Defendants cite to a declaration from Karen Bellamy ("Bellamy Decl."), the Director of the Inmate Grievance Program at DOCCS. (Bellamy Decl. ¶ 1.) Plaintiff has, in total, appealed twenty five grievances to CORC and only three of these relate to this action; those appeals concern the light and sound conditions in Shawangunk, the conditions of Plaintiff's transfer Upstate which resulted in the seven hours in shackles, and Plaintiff's requests

for transfer to a facility of his choice and for payment of his earned wages and the wages he did

not earn due to his confinement in SHU. (*Id.* ¶ 16, Ex. A.) Plaintiff's claims in this matter arise

from the July Decision and the October Appeal[11] as well as issues with prison condition.

Accordingly, Plaintiff must follow the grievance process for his prison condition claims and the

administrative appeal procedure for his Fourteenth Amendment Due Process Clause claims from

the July Decision and the October Appeal. *See Kimbrough v. Fischer*, No. 13-CV-0100, 2014

WL 12684106, at *6 (N.D.N.Y. Sept. 29, 2014).

Plaintiff properly exhausted his claims for the due process violations from the July

Decision and the October Appeal. Plaintiff filed an Article 78 action about both his hearing

before Defendant Farah and his appeal of the hearing before Defendant Prack. (Am. Compl. Ex.

F.) In this action, Plaintiff requested that the determination from the July 24, 2013 disciplinary

hearing be vacated and all entries of the determination be expunged from the Plaintiff's records

and that he be restored to the status he held prior to the disciplinary action. (*Id.*) The court held

that Plaintiff's requests about the July Decision were moot because the July Decision had already

been vacated and expunged. The court also held that the Plaintiff did not have a right to return to

Sing Sing, regardless of his preference for Sing Sing's educational and rehabilitative programs or

of whether his transfer was in response to his actions on June 21, 2013.[12] (*Id.*) Courts have held

that an Article 78 proceeding "constitutes a wholly adequate post-deprivation hearing for due

process purposes." *Tessler v. Paterson*, 768 F. Supp. 2d 661, 671 (S.D.N.Y. 2011) (quoting

---

[11] As discussed *supra*, to have exhausted claims relating to the disciplinary hearings, Plaintiff was required to follow the administrative appeals process, including appealing to the Commissioner of DOCCS. *Davis v. Barrett*, 576 F.3d 129, 131–32 (2d Cir. 2009); *see* N.Y. Comp. Codes R. & Regs., tit. 7, § 254.8.

[12] " '[A]n inmate has no right to remain in a particular facility' and the Commissioner has broad discretion to transfer inmates." (Am. Compl. Ex. F (citing *Matter of Davis v. Fischer*, 81 A.D.3d 1011, 1012 (N.Y. App. Div. 3d Dep't 2011).)

*Locurto v. Safir*, 264 F.3d 154, 175 (2d Cir. 2001)). Therefore, the Plaintiff has exhausted his due process Fourteenth Amendment claims related to the July Decision and the October Appeal.

Plaintiff did not exhaust his claims regarding the June 21, 2013 report and the Defendants' subsequent actions, which were allegedly in retaliation for exercising his First Amendment rights.[13] Plaintiff claims that he was willfully deprived of his religious diet, but Plaintiff filed a grievance and received a response both explaining the reason for the delay and noting that the Plaintiff "is currently receiving [religious] meals." (Am. Compl. ¶ 99(h), Ex. L.) Plaintiff took no further action. Plaintiff states that he exhausted his remedies for the inadequate clothing he had in SHU (*Id.* ¶ 99(e)) but Plaintiff only submitted an initial grievance and he received the clothes after his grievance. (*Id.* Ex. I.) Plaintiff took no further action, other than to thank the DOCCS for sending him clothes and to request a coat on August 5, 2013. (*Id.*) While Plaintiff wrote to Defendant Rock on the day he would have been released from SHU if his time-cut had been applied, the Defendant did not submit the required Mandamus Petition or follow other required administrative procedures. (*Id.* ¶ 99(c), Ex. M.) Plaintiff made claims for lost property and received notice from Shawangunk that his claims were denied and that he had the option to appeal, but Plaintiff took no further action. (*Id.* ¶ 99(i), Ex. O.)

In summary, Plaintiff properly exhausted his Eighth Amendment claims for the light and sound conditions at Shawangunk and for his transfer Upstate. He also properly exhausted his due process claims related to the July Decision and the October Appeal as well as the related

---

[13] Plaintiff states throughout the Amended Complaint and in several of his exhibits that the Defendants were biased against him and retaliated against his exercise of his First Amendment rights, but Plaintiff does not support these claims or otherwise take steps toward exhaustion. Plaintiff was required to adhere to the grievance procedure to exhaust his retaliation claims. *See Chavis v. Goord*, 333 F. App'x 641, 643 (2d Cir. 2009) (affirming dismissal of a plaintiff's First Amendment retaliation claim for failure to exhaust through any administrative remedies, including the grievance procedure).

issues with Plaintiff's wages[14] and educational or rehabilitation program options. [15]  Plaintiff has

not exhausted his claims for retaliation, deprivation of his religious diet, lack of clothes and a

coat while he was in SHU, failure to honor his time-cut, and loss of his personal property.  While

Plaintiff did file grievances relating to some of these issues, he did not "invoke all available

administrative mechanisms, including appeals, 'through the highest level for each claim.' "

*Evans v. Cuzback*, No. 17-CV-7887(NSR), 2016 WL 554845, at *3 (S.D.N.Y. Feb. 9, 2016)

(quoting *Varela v. Demmon*, 491 F. Supp. 2d 442, 447 (S.D.N.Y. 2007)).  Specifically, he failed

to appeal to the CORC. *See* N.Y. Comp. Codes. R. & Regs., tit. 7, § 701.7.

Thus, Plaintiff's claims for retaliation, deprivation of his religious diet, inadequate

clothing, the length of his time in SHU, and lost property are dismissed as Plaintiff did not fully

exhaust his administrative remedies.[16]  (Defs.' Mot. to Dismiss p. 19.)

### B.        Personal Involvement

Defendants state that Plaintiff fails to allege the personal involvement of Defendants

Capra, Smith, Rock, and Prack for any constitutional violation, and of any Defendant for the

Eighth Amendment conditions of confinement claim.[17]  (Defs.' Mot. to Dismiss pp. 23, 27.)

"It is well settled in this Circuit that 'personal involvement of defendants in alleged

---

[14] There appears to have been some confusion between Plaintiff's claims for wages.  (Am. Compl. Exs. P, Q.) One of these claims is for money Plaintiff earned, approximately $28.80, and the other claim is for the approximately $54 Plaintiff estimates he would have earned had he not been confined to SHU.  The Plaintiff submitted two separate requests to the CORC for these claims and the CORC appears to have combined these claims.  The Plaintiff alerted the CORC to this issue in a September 8, 2014 "appeal statement," but it was evident from the CORC December 20, 2014 statement that the confusion still existed.  Thus, in fairness to the Plaintiff, who essentially exhausted both claims, the Court will consider both his claims for his earned wages and for the wages he would have earned to be exhausted.

[15] Plaintiff did not exhaust these claims through the grievance procedure, but they were addressed as part of his Article 78 action and the Court finds that the DOCCS had sufficient notice of and opportunity to respond to these claims. Therefore, they are exhausted.

[16] The Court will not address Qualified Immunity because Defendants only pled Qualified Immunity for Plaintiff's First Amendment claims, which are dismissed for failure to exhaust. (Defs.' Mot. to Dismiss pp. 13–15.)

[17] The Court will not consider personal involvement for the claims that the Plaintiff has failed to exhaust because those claims are dismissed. *See supra* Part III(A).

constitutional deprivations is a prerequisite to an award of damages under § 1983.' " *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (quoting *Moffitt v. Town of Brookfield,* 950 F.2d 880, 886 (2d Cir.1991) (citations omitted); *Randle v. Alexander*, 960 F. Supp. 2d 457, 477 (S.D.N.Y. 2013) ("It is axiomatic that individual defendants cannot be liable for § 1983 violations unless they are personally involved with the alleged conduct.")  There are five categories of conduct that can establish the personal involvement of a supervisory defendant:

> (1) The defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

*Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995).  An inmate's allegation that an official ignored a written protest or request is insufficient to establish personal involvement.  *Platt v. Incorporated Village of Southampton*, 391 F. App'x 62, 65 (2d Cir. 2010) (holding that allegations that a supervisor ignored a letter protesting unconstitutional conduct was insufficient to establish that the supervisor was personally involved); *Jones v. Annucci*, No. 16-CV-3516(KMK), 2018 WL 910594, at *11 (S.D.N.Y. Feb. 14, 2018); *Alvarado v. Westchester County*, 22 F. Supp. 3d 208, 215 (S.D.N.Y. 2014); *Wingate v. Horn*, No. 07-CV-2521, 2009 WL 320182, at *2 (2d Cir. Feb. 10, 2009) (holding that defendants were not personally involved and not liable under § 1983 for their failure to respond to or investigate the plaintiff's letters concerning denial of his right to vote).

Interpreting the *pro se* Plaintiff's Amended Complaint liberally, and only addressing those claims exhausted by the Plaintiff, Plaintiff successfully alleges the personal involvement of

Defendants Farah and Prack based on the July Hearing and the October Appeal,[18] and Defendant

Wright for his role in withholding Plaintiff's earned wages. (Am. Compl. ¶ 91.) Defendant

Smith was personally involved in Plaintiff's claim about the light and sound conditions in

Shawangunk because he received and responded to Plaintiff's grievance on the issue. (*Id.* Ex. H.)

Plaintiff fails to allege the personal involvement of any named Defendant for his Eighth

Amendment claim from his transfer Upstate. (*Id.* ¶ 80, Ex. K.) A broad reading of Plaintiff's

Amended Complaint could conclude that Plaintiff alleges the supervisory involvement of

Defendant Rock, as the Upstate Superintendent or Defendant Smith, as Shawangunk

Superintendent. Defendants Rock's and Smith's supervisory roles alone is insufficient to

establish their personal involvement. *See Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995).

Nothing in Plaintiff's Amended Complaint suggests that they actively participated in creating the

conditions of, or in creating a policy to allow, the transfer, failed to act, displayed gross

negligence, or were deliberately indifferent. *See Shomo v. City of New York*, 579 F.3d 176, 184

(2d Cir. 2009) ("Given [Plaintiff]'s failure to allege the supervisors' personal involvement in the

alleged Eighth Amendment violations, the district court properly ruled that [Plaintiff] failed to

state valid claims against the supervisors."). Similarly, Plaintiff fails to allege the personal

involvement of any named Defendant in his requests for payment of wages he would have

earned if he had not been confined to SHU. From Plaintiff's Amended Complaint, it appears that

he began requesting these wages in July of 2014, but no request or response on this issue was

addressed to or from a named Defendant. (*Id.* Ex. P.)

The remainder of the Defendants only appear to have received written protests from the

---

[18] The Court understands Plaintiff's claim for lost educational and rehabilitative opportunities to be included in his claims against Defendants Farah and Prack because Judge Susan Cacace ruled on that issue in her decision on Plaintiff's Article 78 action against Defendant Prack. (Am. Compl. Ex. F.)

Plaintiff or were not otherwise personally involved in Plaintiff's exhausted claims. Plaintiff makes conclusory statements about the Defendants[19] in an attempt to establish their personal involvement, but he fails to support these conclusory statements with factual allegations to allow this court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009).

After the exhaustion and personal involvement analyses, Plaintiff's surviving claims are for the light and sound conditions at Shawangunk against Defendant Smith, his due process claims related to the July Decision and the October Appeal against Defendants Farah and Prack, and his claim for the withheld earned wages against Defendant Wright. Plaintiff's remaining claims are dismissed.

### C.      Eight Amendment Cruel and Unusual Claims

Plaintiff claims that he was subjected to cruel and unusual punishment in violation of the Eighth Amendment, made applicable to the States by the Fourteenth Amendment. *See Estelle v. Gamble*, 429 U.S. 97, 102 (1976) (citing *Robinson v. California*, 370 U.S. 660, 675 (1962)). "The Eighth Amendment sets constitutional boundaries on the conditions of imprisonment." *Boddie v. Schnieder*, 105 F.3d 857, 861 (2d Cir. 1997). While the Constitution does not require "comfortable" prison conditions, "the conditions of confinement may not 'involve the wanton and unnecessary infliction of pain.' " *Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347, 349 (1981)). To state a claim that an inmate's conditions of confinement violate the Eighth Amendment, the inmate must claim that (1) the conditions the inmate endured are "objectively, sufficiently serious" and (2) the

---

[19] For example, Plaintiff states that Defendant Keysor "allowed a policy where SHU confinement was used as a punishment for conduct that did not pose a threat to the safety/security of the facility" and that Defendant Capra "allowed an unconstitutional policy to prevail. (*Id.* ¶¶ 7–8.)

defendants involved acted with a "sufficiently culpable state of mind." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *see Walker*, 717 F.3d at 125; *Boddie*, 105 F.3d at 861.

To satisfy the objective prong, the inmate must demonstrate that the conditions, either alone or combined, create an "unreasonable risk of serious damage to [the inmate's] health," including the inmate's future health. *Walker*, 717 F.3d at 125; *Jabbar v. Fischer*, 683 F.3d 54, 57 (2d Cir. 2012); *see Rhodes*, 452 U.S. at 347. To satisfy the subjective prong, the inmate must demonstrate that the defendant acted with "more than mere negligence," but with intent, which includes deliberate indifference. *Farmer*, 511 U.S. at 835. To have acted with deliberate indifference, "the prison official must know of, and disregard, an excessive risk to inmate health or safety."[20] *Jabbar*, 683 F.3d at 57.

Plaintiff "suffered sensory torture in the form of incessant bright lights . . . and constant noise antagonism by his proximity to the constant 'clacking' sound of the back door next to his cell." (Am. Compl. ¶ 75.) As a result, Plaintiff experiences sleep deprivation "akin to torture and extreme negotiation tactics." (*Id.*) From the Plaintiff's grievance and the CORC's response, it appears that the Plaintiff had control of the lights in his cell, but the gallery lights were constantly on. (*Id.* Ex. H.)

Plaintiff's pleading is sufficient to state a claim for the light and sound issues. Plaintiff specifies that the lights were "bright" and "incessant," which could be objectively sufficiently serious. In Plaintiff's grievance, he notes that the "lights are particularly bright and make it hard to sleep at night." Plaintiff describes the sound from the door as a "constant 'clacking' " and states that he "suffered from sleep deprivations" as a result. (*Id.* ¶ 75.) Plaintiff's allegations are

---

[20] Knowledge may be assumed if the risk was obvious or otherwise should have been known to the defendant. *Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013).

sufficient to suggest that the light and noise posed an "unreasonable risk of serious damage to [the inmate's] health." *Walker*, 717 F.3d at 125; *see Phelps v. Kapnolas*, 308 F.3d 180, 182, 186–87 (2d Cir. 2002) (holding that a plaintiff pled sufficient facts to support his Eighth Amendment claim about a restricted diet he was served in SHU because he described the diet and stated that it did not "contain sufficient calories . . . to maintain [his] medical or physical health"). Moreover, Defendants were aware that the condition posed a risk to Plaintiff, through Plaintiff's grievance, and failed to act. (Am. Compl. Ex. H.) Since the Court is required to accept all factual allegations as true at this stage and because Plaintiff is *pro se*, the Court holds that these statements are enough to state a plausible claim for relief. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Askew v. Lindsey*, No. 15-CV-7496(KMK), 2016 WL 4992641, at *2 (S.D.N.Y. Sept. 16, 2016) (citing *Sykes v. Bank of America*, 723 F.3d 399, 403 (2d Cir. 2013)).[21]

### D. Fourteenth Amendment Due Process Violation Claims

The Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. To state a procedural due process claim, Plaintiff must show "(1) that Defendants deprived him of a cognizable interest in life, liberty, or property, (2) without affording him constitutionally

---

[21] Even if Plaintiff's Eighth Amendment claim for the conditions of his transfer Upstate had not been dismissed for lack of a personally involved Defendant, Plaintiff fails to state a claim for relief. In Plaintiff's grievance, he states that he was shackled for seven hours in the Downstate holding facility and was "forced to eat and use the bathroom in those conditions. (Am. Compl. Ex. K.) Plaintiff complained and was placed in a smaller holding cell. (*Id.* Ex. K.) In *Livigni v. Ortega*, the court dismissed the plaintiff's Eighth Amendment claim for the seven hours he spent tightly handcuffed in a stationary transport bus without access to a bathroom or water. No. 15-CV-9454, 2016 WL 6143351, at *1 (S.D.N.Y. Oct. 19, 2016) "As distasteful as the practice of leaving inmates in a transport van overnight may be, this Court is compelled to conclude that it does not, standing alone, constitute a violation of the Eighth Amendment." *Id.* at *3. Here, Plaintiff alleges even less harm than the Plaintiff in *Livigni*. Plaintiff only states that he was confined while he was being transferred to a new facility and does not imply that any conditions of his confinement were harmful. While Plaintiff states that these conditions were "atypical" and a "significant hardship," these conclusions are insufficient to support an Eighth Amendment claim that the conditions were, objectively, sufficiently serious to be cruel and unusual.

sufficient process." *Proctor v. LeClaire,* 846 F.3d 597, 608 (2d Cir. 2017) (internal quotation marks omitted).

Prison discipline typically implicates a protected liberty interest "only if the discipline imposes [an] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Davis v. Barrett*, 576 F.3d 129, 133 (2d Cir. 2009) (internal quotation marks omitted); *see Sandin v. Conner*, 515 U.S. 472, 484 (1995). The Second Circuit has recognized that the "atypical and significant hardship" standard is "grounded on the idea that a conviction extinguishes liberty interests." [22] *Benjamin v. Fraser,* 264 F.3d 175, 189 (2d Cir. 2001). However, "serious prison discipline like . . . solitary confinement must meet 'the minimum requirements of procedural due process appropriate for the circumstances.' " *Willey v. Kirkpatrick*, 801 F.3d 51, 64 (2d Cir. 2015) (quoting *Wolff v. McDonnell*, 418 U.S. 539, 558 (1974)).

These "minimum requirements" include the right to advance written notice of the alleged violation, a fair and impartial hearing officer, a written statement of the evidence relied upon and the reason for imposing the disciplinary action, and the right to call witnesses and present documentary evidence when not unduly hazardous to institutional safety or correctional goals. *Id.*; *Wolff*, 418 U.S. at 563, 566. These minimum requirements do not include the right for the inmate to cross examine witnesses. *Id.* (citing *Wolff*, 418 U.S. at 567). While the grievance procedure is available to the Plaintiff, "[p]rison grievance procedures do not confer any substantive right upon an inmate requiring the procedural protections envisioned by the Fourteenth Amendment." *Torres v. Mazzuca*, 246 F. Supp. 2d 334, 342 (S.D.N.Y. 2003).

---

[22] Here, Plaintiff's claims arose from prison discipline he experienced while he was incarcerated for crimes for which he had been convicted. *See Inmate Population Search*, DOCCS, http://nysdoccslookup.doccs.ny.gov/GCA00P00/WIQ3/WINQ130 (last visited Aug. 29, 2018).

"Consequently, 'courts regularly dismiss claims brought to remedy alleged violations of inmate grievance procedures.' " *Monroe v. Gerbing*, No. 16-CV-2818(KMK), 2017 WL 6614625, at *14 (S.D.N.Y. Dec. 27, 2017) (quoting *Martinez v. Schriro*, No. 14-cv-3965, 2017 WL 87049, at *3 (S.D.N.Y. Jan. 9, 2017)); *Alsaifullah v. Furco*, No. 12 Civ. 2907, 2013 WL 3972514, at *13 (S.D.N.Y. Aug. 2, 2013).

Here, Plaintiff argues that the grievance process, the hearing and July Decision, and the October Appeal resulted in "the loss of his liberty and property in violation of the Fourteenth Amendment Due Process Clause." (Am. Compl. ¶ 104.)

### 1. Plaintiff's Liberty Interest

First, it is established that the Plaintiff had a liberty interest in remaining free from disciplinary confinement. *See Martin v. Oey*, No. 16-CV-717, 2017 WL 9511174, at *5 (N.D.N.Y. July 19, 2017) ("The prevailing view in this Circuit is that, by its regulatory scheme, the State of New York has created a liberty interest in remaining free from disciplinary confinement.") (quoting *Liao v. Malik*, No. 13-CV-1497, 2016 WL 1128245, at *4 (N.D.N.Y. Feb. 26, 2016)). To determine whether SHU imposes an atypical and significant hardship on this interest, courts consider, among other factors, the duration and conditions of confinement. *J.S. v. T'Kach*, 714 F.3d 99, 106 (2d Cir. 2013). The 120 days Plaintiff spent in SHU is sufficient to plausibly constitute an atypical and significant hardship. *See id.* ("In the absence of factual findings to the contrary, confinement of 188 days is a significant enough hardship."); *Palmer v. Richards*, 364 F.3d 60, 65–66 (2d Cir. 2004) ("[W]e have affirmed dismissal of due process claims only in cases where the period of time spent in SHU was exceedingly short—less than [] 30 days.").

The second question is whether the Plaintiff was afforded constitutionally sufficient

process.  Plaintiff admits that, in his disciplinary hearing, he submitted documentary evidence and read his statement and objections into the record; he also received a statement of the disposition, the evidence relied upon, and the reasons for the result. (Am. Compl. ¶ 49, Ex. C.) However, Plaintiff also states that Defendant Farah was "biased and partial against Plaintiff." (*Id.* ¶ 51.)  Plaintiff appears to assert that Defendant Farah was biased because he did not rule in Plaintiff's favor. "Defendant Farah was aware of the constitutionality of [Plaintiff's] silence . . . because [Plaintiff] continuously argued that his conduct was protected and not proscribed at the hearing." (*Id.*¶¶ 51–52, 58.)  These conclusions do not support a plausible claim that Defendant Farah was biased against the Plaintiff. Even if there were facts to support Defendant Farah's alleged partiality, disciplinary hearing officers are "not held to the same standard of neutrality as adjudicators in other contexts." *Allen v. Cuomo*, 100 F.3d 253, 259 (2d Cir. 1996). Rather, hearing officers must not be so partial as to present a "hazard of arbitrary decision making." *Wolff v. McDonnell*, 418 U.S. 539, 571 (1974).  Here, Plaintiff alleged no facts to support the conclusion that Defendant Farah was partial or, assuming partiality, that Defendant Farah would make an arbitrary decision.  The same is true for Plaintiff's appeal before Defendant Prack. Plaintiff alleges that Defendant Prack also knew that Plaintiff's original actions on June 20, 2013 were "prescribed" but allowed Plaintiff to remain in SHU. (Am. Compl. ¶ 61.) Plaintiff was again permitted to submit his statement and objections for consideration and he repeated his allegation that Defendant Farah was biased. [23] (*Id.* ¶ 62, Ex. D.) Again, Plaintiff did not include any facts to support the conclusion that Defendant Prack was biased or violated any duty towards

---

[23] Plaintiff claims that his disciplinary hearing was not concluded at the required date because a DOCCS extension was granted, even though the extension was filed after hours on the deadline to file the extension. He also repeats his allegation that the misbehavior report was insufficiently specific and that Defendant Farah's determination was not supported by sufficient evidence. (*Id.* Ex. D.) The Court holds that none of these claims demonstrate that Plaintiff was deprived of the "minimum requirements of procedural due process appropriate for the circumstances." *See Willey v. Kirkpatrick*, 801 F.3d 51, 64 (2d Cir. 2015).

Plaintiff, or that the process of his appeal was deficient. *See Wolff*, 418 U.S. at 563, 566.

Although Plaintiff's confinement to SHU was plausibly an atypical burden on his liberty interest, he was afforded constitutionally sufficient process. Thus, Plaintiff's due process violation claim for deprivation of his liberty interest is dismissed.

### 2. Plaintiff's Interests in Programs and Wages

Plaintiff claims that he was deprived of educational and rehabilitative opportunities and that payment of his earned wages was delayed without sufficient process.

Courts have held that plaintiffs do not have a constitutionally protected interest in programs or in choosing their facility. *Richards v. Goord*, No. 04-CV-1433, 2007 WL 201109, at *12 (N.D.N.Y. Jan. 23, 2007) ("I agree with the Defendants that this [Fourteenth Amendment] claim should be dismissed with prejudice for the reason . . . that Plaintiff did not have a fundamental right to a taxpayer-funded substance abuse rehabilitation program much less the program of his choice."); *Choice v. Coughlin*, No. 94-CV-8307, 1996 WL 325627, at *9 (S.D.N.Y. June 11, 1996) ("An inmate 'has no justifiable expectation that he will be incarcerated in any particular prison within a state' and has no constitutional right to be transferred from one facility to another." (quoting *Olim v. Wakinekona*, 461 U.S. 238, 245–46 (1983)); *Persico v. Gunnell*, 560 F. Supp. 1128, 1134 (S.D.N.Y. 1983) (holding that Plaintiff's claim that his transfer to a different facility caused him a lost opportunity to participate in a pre-release program was not a violation of the Due Process Clause). Thus, Plaintiff has no due process claim for the loss of access to educational and rehabilitative programs at Sing Sing.

Turning to Plaintiff's claims about payment of his wages, while Plaintiff had a property interest in the money he had already earned, he was ultimately paid those wages. *See Diaz v. Pelo*, No. 15-CV-776, 2017 WL 1380756, at *7 (S.D.N.Y. Mar. 24, 2017). "[T]here is no

property interest in prompt payment." *Allen v. Cuomo*, 100 F.3d 253, 261 (2d Cir. 1996); *see Williamson v. Goord*, No. 01-CV-6250(CJS), 2003 WL 23101784, at *3 (W.D.N.Y. Apr. 10, 2003). Therefore, there is no Due Process Clause violation.[24]

### E.    Relief

Plaintiff seeks declaratory, injunctive, and compensatory relief. "[A]n inmate's transfer from a prison facility generally moots claims for declaratory and injunctive relief against officials of that facility." *Salahuddin v. Goord*, 467 F.3d 263, 272 (2d Cir. 2006); *see Beyah v. Coughlin*, 789 F.2d 986, 988–89 (2d Cir. 1986) (holding that the plaintiff's claims for declaratory and injunctive relief were moot after his transfer from the relevant facility, but that the plaintiff's compensatory and punitive claims were not moot). Plaintiff has been transferred from all of the facilities involved in his Amended Complaint. His claims for declaratory and injunctive relief are dismissed as moot. His claims for compensatory and punitive relief remain.[25]

## IV.    CONCLUSION

For the reasons stated above, Defendants' motion to dismiss the Amended Complaint is GRANTED in part, DENIED in part. All claims against Defendants Cassel, Wright, Laporto,

---

[24]Plaintiff's claim for the wages he would have earned is dismissed for lack of a personally involved Defendant. Assuming that there had been a personally involved Defendant, it is unclear whether Plaintiff had a property interest in the wages he would have earned had he not been confined in SHU. *Hedgespeth v. Hendricks*, No. 06-CV-3883(AET), 2007 WL 2769627, at *8 (D. N.J. Sept. 21, 2007) (holding that there was a liberty in the wages an inmate "would have otherwise earned had he not been confined in disciplinary detention"); *Bunting v. Nagy*, No. 01-CV-5716(SHS), 2003 WL 21305339, at *1–3 (S.D.N.Y. June 6, 2003) (holding that a plaintiff, who served a 121 day disciplinary sentence to keeplock, stated a Fourteenth Amendment claim for the wages he would have earned through his work incentive program while in keeplock after his disciplinary sentence was reversed). *But see Wilson v. Kelly*, No. 11-CV-030, 2012 WL 3704996, at *2, 12, (N.D.N.Y. Aug. 27, 2012) (upholding the magistrate judge's decision dismissing Plaintiff's due process claims for loss of wages resulting from his disciplinary confinement in keeplock confinement, which was reversed). Assuming that there is a property interest in such wages, the next question would be whether the Plaintiff was provided constitutionally sufficient process. Plaintiff was afforded sufficient process in the hearing and the appeal. Plaintiff also followed the grievance procedure for this wage claim and received a decision from the CORC. However, as discussed *supra* note 14, it appears that the CORC mistakenly combined Plaintiff's two distinct wage claims. Therefore, Plaintiff did not have sufficient process.

[25] Plaintiff's request for punitive relief is specific to his Eighth Amendment claims. (Am. Compl. ¶109.) Plaintiff requests compensatory relief for all of his claims. (*Id.* ¶¶ 102–09.)

Keysor, Capra, Farah, Prack, and Rock are dismissed. Plaintiff's Eighth Amendment claim against Defendant Smith for the light and noise conditions at Shawangunk remain, and all other claims against Defendant Smith are dismissed. The Clerk of Court is respectfully directed to terminate the motion (ECF No. 38) and to terminate Defendants Cassel, Wright, Laporto, Keysor, Capra, Farah, Prack, and Rock from this action. Remaining Defendant Smith is directed to file an answer to the Amended Complaint on or before September 28, 2018. The parties are directed to confer, complete, and submit to the Court the attached case management plan on or before October 19, 2018. The Clerk of Court is also directed to mail a copy of this Opinion and Order to Plaintiff at his address listed on ECF and show proof of service on the docket. This constitutes the Court's Opinion and Order.

Dated: August 31, 2018  
      White Plains, New York

SO ORDERED:

NELSON S. ROMÁN  
United States District Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Rev. Jan. 2012

------------------------------------------------------------x

                                                    **CIVIL CASE DISCOVERY PLAN**
                                Plaintiff(s),        **AND SCHEDULING ORDER**

        - against -


                                Defendant(s).        _____ CV _____ (NSR)


------------------------------------------------------------x

   This Civil Case Discovery Plan and Scheduling Order is adopted, after consultation with counsel,
pursuant to Fed. R. Civ. P. 16 and 26(f):

1.   All parties [consent] [do not consent] to conducting all further proceedings before a
     Magistrate Judge, including motions and trial, pursuant to 28 U.S.C. § 636(c). The parties
     are free to withhold consent without adverse substantive consequences. (If all parties
     consent, the remaining paragraphs of this form need not be completed.)

2.   This case [is] [is not] to be tried to a jury.

3.   Joinder of additional parties must be accomplished by ____ _____.

4.   Amended pleadings may be filed until _____.

5.   Interrogatories shall be served no later than _____, and responses thereto
     shall be served within thirty (30) days thereafter. The provisions of Local Civil Rule 33.3
     [shall] [shall not] apply to this case.

6.   First request for production of documents, if any, shall be served no later than
     _____.

7.   Non-expert depositions shall be completed by _____.

     a.   Unless counsel agree otherwise or the Court so orders, depositions shall not be held
          until all parties have responded to any first requests for production of documents.

     b.   Depositions shall proceed concurrently.

     c.   Whenever possible, unless counsel agree otherwise or the Court so orders, non-party
          depositions shall follow party depositions.

8.      Any further interrogatories, including expert interrogatories, shall be served no later than _____.

9.      Requests to Admit, if any, shall be served no later than _____.

10.    Expert reports shall be served no later than _____.

11.    Rebuttal expert reports shall be served no later than _____.

12.    Expert depositions shall be completed by _____.

13.    Additional provisions agreed upon by counsel are attached hereto and made a part hereof.

14.    **ALL DISCOVERY SHALL BE COMPLETED BY** _____.

15.    Any motions shall be filed in accordance with the Court's Individual Practices.

16.    This Civil Case Discovery Plan and Scheduling Order may not be changed without leave of Court (or the assigned Magistrate Judge acting under a specific order of reference).

17.    The Magistrate Judge assigned to this case is the Hon. _____.

18.    If, after entry of this Order, the parties consent to trial before a Magistrate Judge, the Magistrate Judge will schedule a date certain for trial and will, if necessary, amend this Order consistent therewith.

19.    The next case management conference is scheduled for _____, at _____. (The Court will set this date at the initial conference.)

SO ORDERED.

Dated:  White Plains, New York
       _____

                              _____
                              Nelson S. Román, U.S. District Judge