```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 9/26/2022
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CONRAD MARHONE,

                              Plaintiff,

        -against-

C.O. J. CASSEL, *et al.*,

                              Defendants.

No. 16-cv-4733 (NSR)
**OPINION & ORDER**

NELSON S. ROMÁN, United States District Judge:

Plaintiff Conrad Marhone ("Plaintiff"), an incarcerated *pro se* litigant, commenced this action on June 21, 2016 against Defendants Cassel, Wright, Laporto, Keysor, Capra, Smith, Farah, Frack, and Rock, current or former employees of the New York State Department of Corrections and Community Supervision ("DOCCS"), pursuant to 42 U.S.C. § 1983. (*See* Second Amended Complaint ("Compl."), ECF No. 97.) On August 31, 2018 the Court partially granted Defendants' motion to dismiss all claims and Defendants except Plaintiff's Eighth Amendment Claim against Defendant Joseph Smith, retired Superintendent of Shawangunk Correctional Facility of DOCCS (hereinafter, "Defendant Smith") based on the light and noise conditions at the Shawangunk Special Housing Unit. *See Marhone v. Cassel*, No. 16-CV-4733 (NSR), 2018 WL 4189518, at *12 (S.D.N.Y. Aug. 31, 2018).

Presently before the Court is Defendant Smith's Motion for Summary Judgment (ECF No. 155) and Plaintiff's Motion for Default Judgment (ECF Nos. 142 and 143). For the reasons discussed below, Plaintiff's Motion for Default Judgment is DENIED and Defendant Smith's Motion for Summary Judgment is GRANTED.

**BACKGROUND**

The facts below are taken from the parties' Rule 56.1 statements, affidavits, declarations, and exhibits, and are not in dispute except where so noted. All rational inferences are drawn in Plaintiff's favor.

On June 21, 2013, Plaintiff, an inmate in DOCCS custody, was transferred to Shawangunk Correctional Facility ("Shawangunk") pending disposition of disciplinary proceedings regarding a misbehavior report received at Sing Sing Correctional Facility. (Pl.'s Dep. Tr. at 32:2–11, (ECF 160, Exh. C); Pl. Decl. ¶ 1 (ECF No. 150, Exh. O)). Plaintiff was transferred out of Shawangunk on August 9, 2013. (ECF 160, Exh. D at 9). During his entire time at Shawangunk, Plaintiff was housed in cell SHU-15 of the Special Housing Unit ("SHU"). (Pl.'s Dep. Tr. at 40:4–5; 56:9–14.)

Plaintiff's cell had walls on three sides, and the front side facing the gallery contained a gate with metal grids that allowed for viewing into the cell. (Pl.'s Dep. Tr. at 47:22–48:17.). The lights in the SHU gallery remained on 24 hours a day for security reasons. (Larry Ebert Decl. ¶ 11 (ECF No. 160, Exh. F); Ronald Farah Decl. ¶ 6 (ECF No. 160, Exh. E); Joseph Smith Decl. ¶ 6 (ECF No. 159)). The lights in the gallery were kept on in order to permit observation in the cells and to prevent illicit conduct, while also permitting staff to monitor the health and well-being of inmates without disturbing them by entering their cells. (Smith Decl. ¶ 6.)

In addition, each SHU cell had a light fixture above the bed, which included (i) the main component, which had two 32-watt fluorescent light bulbs suitable for reading and other activities[1]; and (ii) an attached 9-watt compact fluorescent light bulb, which could be controlled from the Officer's control post in banks of eight cells, not individual cells. (Ebert Decl. ¶ 13; Farah

---

[1] While Defendant Smith states that the main component of the lighting fixture could only be controlled from inside the cell, Plaintiff disputes this allegation and avers that the officers in the control post could control all of the lights in the cell, and in fact kept them on frequently at night. (*See* Pl. Decl. ¶ 10.)

Decl. ¶ 7; Smith Decl. ¶¶ 10–11).  Facility policy permitted staff to turn on the night lights by bank only if necessary to inspect suspected activity, or to maintain security of the facility or the well-being of the inmates, and the night lights could only be on as long as required to accomplish the purpose for which they were turned on.  (Smith Decl. ¶ 12; Ebert Decl. ¶ 13.)

Plaintiff's cell, SHU-15, was the next-to-last cell along the gallery of the SHU, which was located approximately 14 feet from a heavy metal door that separated the SHU from the medical unit.  (Pl. Dep Tr. at 40:8–23; Ebert Decl. ¶ 6; Smith Decl. ¶¶ 16, 18.)  The door opened away from the SHU gallery and was controlled from the officer control post at the other end of the gallery.  (Ebert Decl. ¶ 6; Smith Decl. ¶ 16.)  Anyone seeking to pass through the door had to press a call button, which activated a camera, and an officer at the control post would release the lock to open the door.  (Ebert Decl. ¶ 6; Smith Decl. ¶ 16.)  A hydraulic door closer on the medical unit side of the top of the door automatically closed the door after someone passed through.  (*Id*.)  While rubber stops had been installed to reduce noise, the heavy metal door still made a loud sound while closing, in addition to a clicking sound when the lock was being released or reset.  (Ebert Decl. ¶¶ 7–8; Farah Decl. ¶ 5; Smith Decl. ¶ 18.)

Access between the SHU and the medical unit was needed 24 hours a day to permit necessary medical traffic and to allow supervisory personnel to make required rounds.  (Smith Decl. ¶ 17.)  Traffic through the medical unit door was reduced at night.  (*Id*.)

During his time in Shawangunk's SHU, Plaintiff verbally complained to staff walking by (including sergeants, officers, and lieutenants) about the constant lights and the loud noise made by the heavy metal door to the medical unit.  (Pl.'s Dep. Tr. at 50:15–25; 68:3–69:22).  Plaintiff filed an inmate grievance, dated August 8, 2013, the day before his transfer out of the SHU.  In the grievance (hereinafter, the "Grievance" or "Grievance Letter"), Plaintiff wrote:

"The lights in the SHU are always on and they're particularly bright making it hard to sleep at night. This is a form of torture and atypical and significant hardship that is not normal. The staff also keep slamming the door right next to my cell to antagonize the inmates[,] specifically me."

(ECF No. 160, Exh. D)

The Grievance was denied on August 19, 2013, and Plaintiff appealed to Defendant Smith, who affirmed the denial on September 30, 2013 because Plaintiff had already been transferred and was no longer affected by the issues in the SHU. (*Id.*) Plaintiff did not seek mental health or medical treatment, including any treatment for insomnia, relating to his complaints about exposure to the lights and noise. (Pl.'s Dep. Tr. at 101:3–101:20.)

## PROCEDURAL BACKGROUND

Plaintiff initially filed this action on June 21, 2016. (ECF No. 2.) Plaintiff filed an Amended Complaint on November 10, 2016 to add additional defendants, including Defendant Smith. (ECF No. 19.) On August 31, 2018, the Court granted Defendants' motion to dismiss in part, dismissing all claims and Defendants except Plaintiff's Eighth Amendment claim against Defendant Smith for the light and noise conditions in the Shawangunk SHU. (ECF No. 48). Defendant Smith filed an answer denying the material allegations on September 28, 2018. (ECF No. 51). On May 10, 2019, the Court received the Second Circuit's mandate dismissing Plaintiff's appeal on the dismissed claims. (ECF No. 66). On February 27, 2020, Plaintiff filed a motion for leave to file a Second Amended Complaint, and represented that the new pleading was not intended to raise any new claims. (ECF Nos. 92.) Leave was granted by Magistrate Judge Lisa M. Smith on March 6, 2020. (ECF No. 96.) Plaintiff filed the Second Amended Complaint on March 6, 2020 (ECF No. 97). On January 14, 2021, the Court denied Plaintiff's motion seeking reconsideration of the August 31, 2018 decision. (ECF No. 148.)

The Court granted Defendant Smith leave to file a motion for summary judgment and set a briefing schedule on February 19, 2021.  On May 27, 2021, Plaintiff filed a notice of motion and a motion for default judgment against Defendant Smith for having received the opening motion papers on summary judgment four days late.  (ECF Nos. 142, 143.)  Defendant Smith filed a letter responding to Plaintiff's default judgment motion on June 3, 2021.  (ECF No. 146.)  After several extension requests, the parties completed briefing on the motion for summary judgment on September 27, 2021.  (*See* ECF No. 163.)

In his Second Amended Complaint, Plaintiff seeks $5,000.00 in compensatory damages and $8,000 in punitive damages against Defendant Smith.  (Compl. at 17.)

## STANDARDS OF REVIEW

### I.       Default Judgment for Untimeliness

Pursuant to Federal Rule of Civil Procedure 55(a), the Court may grant a default judgment when a party has failed to defend an action.  *See* Fed.R.Civ.P. 55(a).  Though a district court may, in its discretion, grant such a judgment, "[t]he Second Circuit has repeatedly emphasized its 'preference for resolving disputes on the merits,' and 'when doubt exists as to whether default should be granted or vacated, the doubt should be resolved in favor of the defaulting party.'" *Moreno-Godoy v. Gallet Dreyer & Berkey, LLP*, No. 14 CIV. 7082 (PAE), 2015 WL 5737565, at *8 (S.D.N.Y. Sept. 30, 2015) (quoting *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 95–96 (2d Cir. 1993) (citation omitted)).

Courts in this Circuit primarily consider three factors when determining whether a default judgment is warranted: "(1) whether the default was willful, (2) whether the defendant demonstrates the existence of a meritorious defense, and (3) whether, and to what extent, vacating the default will cause the non-defaulting party prejudice." *Id.* (quoting *State St. Bank & Trust Co.*

*v. Inversiones Errazuriz Limitada*, 374 F.3d 158, 166-67 (2d Cir. 2004)).  Further, "motions for default judgments will be denied where a party appears to defend unless it is clear that under no circumstances could the defense succeed."  *Rankel v. Kabateck*, No. 12 CV 216 (VB), 2013 WL 7161687, at *7 n.8 (S.D.N.Y. Dec. 9, 2013) (quoting *Guangxi Nanning Baiyang Food Co., Ltd. v. Long River Int'l, Inc*., No. 09 Civ. 3059 (TPG), 2010 WL 1257573, at *3 (S.D.N.Y. Mar. 30, 2010)).

## II.     Summary Judgment Standard

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The moving party bears the initial burden of pointing to evidence in the record, "including depositions, documents . . . [and] affidavits or declarations," *see* Fed. R. Civ. P. 56(c)(1)(A), "which it believes demonstrate[s] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The moving party may support an assertion that there is no genuine dispute of a particular fact by "showing . . . that [the] adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(B).  If the moving party fulfills its preliminary burden, the onus shifts to the nonmoving party to raise the existence of a genuine issue of material fact.  Fed. R. Civ. P. 56(c)(1)(A); *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 252 (1986).

A genuine dispute of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; a*ccord Gen. Star Nat'l Ins. Co. v. Universal Fabricators, Inc*., 585 F.3d 662, 669 (2d Cir. 2009); *Roe v. City of Waterbury*, 542 F.3d 31, 35 (2d Cir. 2008); *Benn v. Kissane*, 510 F. App'x 34, 36 (2d Cir. 2013) (summary order).  Courts must "draw all rational inferences in the non-movant's favor," while

reviewing the record. *Kirkland v. Cablevision Sys.*, 760 F.3d 223, 224 (2d Cir. 2014) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Importantly, "the judge's function is not himself to weigh the evidence and determine the truth of the matter," nor is it to determine a witness's credibility. *Anderson*, 477 U.S. at 249; *see also Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 545 (2d Cir. 2010). Rather, "the inquiry performed is the threshold inquiry of determining whether there is the need for a trial." *Anderson*, 477 U.S. at 250. Summary judgment should be granted when a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex*, 477 U.S. at 322.

Critically, in an opposition to a motion for summary judgment "[s]tatements that are devoid of any specifics, but replete with conclusions" will not suffice. *Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 452 (2d Cir. 1999); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts"); *FDIC v. Great Am. Ins. Co.*, 607 F.3d 288, 292 (2d Cir. 2010) (nonmoving party "may not rely on conclusory allegations or unsubstantiated speculation") (quoting *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998).

When dealing with summary judgment motions in *pro se* cases, courts in this Circuit must "read the pleadings of a *pro se* plaintiff liberally and "raise the strongest arguments that they suggest." *McPherson v. Coombe*, 17 F.3d 276 (2d Cir. 1999) (quoting *Burgos v. Hopkins*, 214 F.3d 787, 790 (2d. Cir. 1994)). Pleadings drafted by *pro se* plaintiffs moving for summary judgment are not held to the same "stringent standards" as "formal pleadings drafted by lawyers." *Shariff v. Poole*, 689 F.Supp.2d 470, 476 (S.D.N.Y. January 20, 2010). On the other hand, *pro se* plaintiffs cannot overcome a motion for summary judgment by simply making "bald" assertions that are unsupported by the evidence. *Id.*

### III.   Section 1983 Actions

#### A.  Standard

Section 1983 provides, in relevant part, that: "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured."  42 U.S.C. § 1983.  Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979); *see Patterson v. County of Oneida*, 375 F.3d 206, 225 (2d Cir. 2004).  To state a claim under § 1983, a plaintiff must allege "(1) the challenged conduct was attributable to a person who was acting under color of state law and (2) the conduct deprived the plaintiff of a right guaranteed by the U.S. Constitution." *Castilla v. City of New York*, No. 09 Civ. 5446, 2013 WL 1803896, at *2 (S.D.N.Y. April 25, 2013); *see Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir. 2010).

Therefore, a Section 1983 claim has two essential elements: (1) the defendant acted under color of state law, and (2) as a result of the defendant's actions, the plaintiff suffered a denial of his federal statutory rights, or his constitutional rights or privileges. *See Annis v. Cnty. of Westchester*, 136 F.3d 239, 245 (2d Cir. 1998); *Quinn v. Nassau Cnty. Police Dep't*, 53 F. Supp. 2d 347, 354 (E.D.N.Y. 1999) (noting that Section 1983 "furnishes a cause of action for the violation of federal rights created by the Constitution") (citation omitted).

#### B.  Personal Involvement

Personal involvement is a prerequisite to the assessment of damages in a Section 1983 case, and respondeat superior is an inappropriate theory of liability for any constitutional claim. *Wright*

*v. Smith*, 21 F.3d 496, 501 (2d Cir.1994); *Randle v. Alexander*, 960 F. Supp. 2d 457, 477 (S.D.N.Y. 2013) ("It is axiomatic that individual defendants cannot be liable for § 1983 violations unless they are personally involved with the alleged conduct.").  To establish a violation of Section 1983 by a supervisor like Defendant Smith, as with everyone else, Plaintiff must establish a deliberate, intentional act on the part of the defendant to violate the plaintiff's legal rights.  *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020) (internal quotations and citations omitted).  The focus is on what the supervisor did or caused to be done, the resulting injury attributable to his conduct, and the *mens rea* required of him to be held liable, which can be no less than the *mens rea* required of anyone else.  *Id*. (internal quotations and citations omitted).

## DISCUSSION

### I.      Default Judgment

Plaintiff moves for a default judgment pursuant to Fed. R. Civ. P. 55 against Defendant Smith for failure to timely serve opening papers on his motion for summary judgment, which was due on April 30, 2021.  (*See* Pl.'s Motion for Default Judgment (ECF No. 143-1) ¶¶ 6–9.) Specifically, Plaintiff argues that while Defendant Smith mailed the opening motion papers on April 30, 2021, the parcel did not arrive to Plaintiff until May 4, 2021.  (*Id*.)   Plaintiff also seeks sanctions and fees against the Defendant Smith for his untimeliness.  (*Id*. ¶ 12.)  Defendant Smith filed an opposition to Plaintiff's default judgment motion, arguing that under Fed. R. Civ. P. 5(b)(2)(C), "service is complete upon mailing," and that because the motion papers were mailed on April 30, 2021, they were timely served.  (Def.'s Opposition to Default Judgment (ECF No. 146) at 1.)

The Court agrees with Defendant Smith, and DENIES Plaintiff's default judgment motion. *See* Fed. R. Civ. P. 5(b)(2)(C) (service is made by "mailing it to the person's last known address— in which event service is complete upon mailing").  The Court also notes that Plaintiff was, in any

event, given two extensions, extending his deadline to serve opposition papers from June 14, 2021 to August 20, 2021.  (*See* Orders Granting Extension Requests (ECF Nos. 145, 147–48)).  Plaintiff therefore was not prejudiced by having received Defendant Smith's motion papers four days late. *See Jiggetts v. United Parcel Serv.*, No. 14-CV-8291 (AJN), 2017 WL 222118, at *2 (S.D.N.Y. Jan. 17, 2017) (no default judgment for untimely filing of motion where "[plaintiff] has pointed to no prejudice that this relatively minor delay has caused to him, nor could he.").

## II.  Eighth Amendment Claims

The Eighth Amendment provides: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."  U.S. Const. amend VIII.  Therefore, the Eighth Amendment "guarantees individuals the right not to be subjected to excessive sanctions." *Miller v. Alabama*, 567 U.S. 460, 469, 132 S. Ct. 2455, 2463, 183 L.Ed. 2d 407 (2012) (quoting *Roper v. Simmons*, 543 U.S. 551, 560, 125 S. Ct. 1183, 1189, 161 L.Ed. 2d 1 (2005)).  The right emanates from the basic precept of justice that punishment for crime should be graduated and proportioned to [the] offense.  *Roper*, 543 U.S. at 560 (citations and internal quotations omitted). "By protecting even those convicted of heinous crimes, the Eighth Amendment reaffirms the duty of the government to respect the dignity of all persons." *Id.*

While the Constitution does not require "comfortable" prison conditions, "the conditions of confinement may not 'involve the wanton and unnecessary infliction of pain.'"  *Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347, 349 (1981)).  "[C]ourts considering a prisoner's [Eighth Amendment] claim must ask both if the officials act[ed] with a sufficiently culpable state of mind and if the alleged wrongdoing was objectively harmful enough to establish a constitutional violation." *Shepherd v. Fisher*, No. 08-CV-9297 (RA), 2017 WL 666213, at *17 (S.D.N.Y. Feb. 16, 2017) (quoting *McMillian*, 503 U.S.

at 1, 8) (internal quotation marks omitted). To satisfy the objective prong, the inmate must demonstrate that the conditions, either alone or combined, create an "unreasonable risk of serious damage to [the inmate's] health," including the inmate's future health. *Walker*, 717 F.3d at 125; *Jabbar v. Fischer*, 683 F.3d 54, 57 (2d Cir. 2012); *see Rhodes*, 452 U.S. at 347. To satisfy the subjective prong, the inmate must demonstrate that the defendant acted with "more than mere negligence," but with intent, which includes deliberate indifference. *Farmer*, 511 U.S. at 835. To have acted with deliberate indifference, "the prison official must know of, and disregard, an excessive risk to inmate health or safety." *Jabbar*, 683 F.3d at 57.

Plaintiff claims that he was subject to cruel and unusual punishment, in violation of his Eighth Amendment rights, when he was subjected to (i) 24-hour lighting and (ii) excessive noise from the heavy metal door while he was housed in the Shawangunk SHU on or about June 21, 2013 to August 9, 2013. For the reasons stated below, the Court disagrees.

### A. Continuous Lighting

Plaintiff alleges that he was subjected to 24-hour lighting while he was in the SHU, which caused him sleep deprivation "akin to torture and extreme interrogation tactics." (Compl. ¶ 75.) Plaintiff alleges that the lights in the gallery section of the SHU were bright and always on (*See* Pl.'s Dep. Tr. at 36:2–37:3), and that the overhead light fixture and night-light inside his cell unit were also kept on by staff members at the SHU's officer control post. (Pl.'s Dep. Tr. at 60:1–6). Plaintiff offers affidavits from fellow inmates who were in the Shawangunk SHU at various periods to corroborate his allegations that inmates were subjected to 24-hour illumination. (*See* ECF. No. 150 (Pl.'s Exhibits in Opposition to Defendant Smith's Summary Judgment motion), Exh. C (Affidavit of Steven Marshall); Exh. D (Affidavit of Jeffrey Francis); Exh. F (Affidavit of Joseph Killimayer); Exh. G. (Affidavit of Clarence Jeffreys). Plaintiff also argues that Defendant

Smith was deliberately indifferent because he consistently disregarded complaints made by inmates regarding the continuous lighting.  (Pl.'s Opp. at 4 (ECF No. 151.)

Defendant Smith, on the other hand, argues that "[k]eeping the lights in the gallery of the SHU at Shawangunk on 24 hours a day has already been litigated and found not to be a violation of inmates' Eighth Amendment rights."  (Def.'s Br. at 9 (citing *Hamilton v. Smith*, No. 06-CV-805 (GTS/DRH), 2009 WL 3199531, at *17 (N.D.N.Y. Jan. 13, 2009), *report and recommendation adopted as modified*, No. 9:06-CV-0805(GTSDRH), 2009 WL 3199520 (N.D.N.Y. Sept. 30, 2009) (hereinafter, "*Hamilton*").  Defendant Smith notes that he was a defendant in the *Hamilton* decision, and the *Hamilton* court's granting of summary judgment in his favor with respect to the plaintiff's Eighth Amendment claim for the Shawangunk SHU's 24-hour lighting "reinforced his belief that the policy of keeping the lights on in the gallery of the SHU 24 hours a day was lawful." (Smith ¶ 8.)

With respect to the lights within the cell, Defendant Smith cites to supporting affidavits from Ronald Farah, Shawangunk's Plant Superintendent during the relevant period (and the current Deputy Superintendent of Administration), and Larry Ebert, the current Plant Superintendent, to assert that the overhead light fixture "cannot be controlled by Correction Officers" and that "only the night lights with 9-watt bulbs" could be controlled from outside the cell.  (Def.'s Br. at 11 (citing to Ebert Decl. ¶ 13, Farah Decl. ¶ 7, and Smith Decl. ¶¶ 10–11)).  Defendant Smith argues that, in any event, Plaintiff fails to allege any health effects that rises to the severity necessary to trigger Eighth Amendment concerns.  (Def.'s Br. at 10–12, 15–17.)

For the reasons stated below, the Court grants Defendant Smith's motion for summary judgment on Plaintiff's Eighth Amendment claims based on the continuous lighting in the SHU.

### 1. Objective Element

"[S]leep is critical to human existence, and conditions that prevent sleep have been held to violate the Eighth Amendment." *Walker v. Schult*, 717 F.3d 119, 126 (2d Cir.2013) (citing, *inter alia*, *Tafari v. McCarthy*, 714 F.Supp.2d 317, 367 (N.D.N.Y.2010)) ("Courts have previously recognized that sleep constitutes a basic human need and conditions that prevent sleep violate an inmate's constitutional rights."). "Requiring inmates to live in constant illumination can . . . under certain circumstances, rise to the level of an Eighth Amendment violation." *Jones v. Rock*, No. 9:12–CV–447 (NAM/TWD), 2013 WL 4804500, *10 (N.D.N.Y. Sept. 6, 2013). The decisions evaluating Eighth Amendment claims based on continuous lighting in the prison setting are very "fact-driven," turning on the degree of illumination, the duration of the inmate's exposure, the extent of harm it causes, and the penological justification for the lighting. *Booker v. Maly*, No. 9:12–CV–246 (NAM/ATB), 2014 WL 1289579, at *18 (N.D.N.Y. Mar. 31, 2014) (citing, *inter alia*, *McGee v. Gold*, No. 1:04–CV–335, 2010 WL 5300805, at *5 (D.Vt. Aug. 3, 2010), *adopted, sub nom. McGee v. Pallito*, 2010 WL 5389996 (D.Vt. Dec. 20, 2010), *vacated and remanded on other grounds sub nom. Kimber v. Tallon*, 556 F. App'x 27 (2d Cir.2014); *Chappell v. Mandeville*, 706 F.3d 1052, 1058–59 (9th Cir.2013) (comparing cases).

Taking these factors into consideration, and resolving all ambiguities and drawing all reasonable inferences in favor of the Plaintiff, the Court finds that Plaintiff's Eighth Amendment claim based on his continuous lighting claim fails on the objective element.

#### *Penological Justification*

First, the Court considers the penological justification of having 24-hour lighting in the SHU. Defendant Smith offers a penological justification, at least for the 24-hour lighting in the SHU gallery: that doing so "is a common practice in disciplinary confinement units, and done for

security reasons to permit observation of inmates in disciplinary confinement, who are at higher risk than inmates in general population."   (Def. Br. at 2 (citing Def. 56.1 ¶ 10; Ebert Decl. ¶ 11; Farah Decl. ¶ 6; Smith Decl. ¶ 6)).  That justification has been deemed acceptable by several courts. *See Tafari v. McCarthy*, 714 F. Supp. 2d 317, 367–68 (N.D.N.Y. 2010) ("Defendants had a legitimate penological interest in protecting both guards and inmates by keeping the lights constantly illuminated in the SHU, a place where some of the most dangerous criminals in the facility were housed."); *Booker v. Maly*, No. 9:12–CV–246 (NAM/ATB), 2014 WL 1289579, at *18–19 (N.D.N.Y. Mar. 31, 2014) (given the penological justification offered by defendant, continuous lighting of SHU with a nightlight did not violate plaintiff's Eighth Amendment rights) *see also Jones v. Smith*, No. 9:09-CV-1058 GLS/ATB, 2015 WL 5750136, at *15 (N.D.N.Y. Sept. 30, 2015) ("It is well-recognized that the ability to maintain the safety of inmates and the officers is a legitimate penological interest.").

### *Degree of Illumination*

Second, the Court considers the degree of illumination.  Plaintiff states and his affiants indicate that the lights in the gallery, which are on at all hours, are "bright."  However, Defendant Smith cites to *Hamilton*, 2009 WL 3199531, where the Court dismissed on summary judgment an inmate's Eighth Amendment claim based on the 24-hour gallery lighting he was subjected to while residing in the Shawangunk SHU for 44 days.  *See id*. at *4.  Besides finding that the inmate admitted during his deposition that he exaggerated his harm, the Court also found that the inmate failed to articulate how the "constant lighting . . . resulted in the deprivation of an identifiable human need," *id*. at 16, and that he "has not shown in any instance that defendants possessed the requisite culpable state of mind . . . [t]he lights remained on in the gallery for inmate safety as Hamilton's gallery housed particularly dangerous inmates."  *Id*. at 17.  Pointing to the *Hamilton*

14

decision, Defendant Smith therefore argues that "[k]eeping the lights in the gallery of the SHU at Shawangunk on 24 hours a day has already been litigated and found not to be a violation of inmates' Eighth Amendment rights." (Def.'s Br. at 9.)[2]

The *Hamilton* decision does indeed undermine Plaintiff's argument that the Shawangunk SHU's gallery lights are problematic, though the Court notes that other decisions have denied summary judgment when plaintiffs complained about similar lighting. *See, e.g., Keenan v. Hall*, 83 F.3d 1083, 1090–91 (9th Cir.1996)) (an allegation that large fluorescent lights directly in front of and behind an inmate's cell that shown into his cell twenty-four hours a day, causing him grave sleeping problems and other mental and psychological problems stated a claim of cruel and unusual punishment that could withstand a motion for summary judgment). Therefore, the inquiry here must continue.

The Court next considers the cell lights. Both parties agree that the 9-watt night-light could be controlled by the officers in the control post, but while Plaintiff alleges that this light was on "60 to 75 percent of the time" at night (Pl.'s Dep at 37:2 to 37:25), Defendant Smith argues that under facility policy "[s]taff was not permitted to keep the night lights on without legitimate grounds for doing so." (Smith Decl. ¶ 12.) Regardless of whether the 9-watt night-light was kept on most of the night, however, Courts have found that such low wattage does not create an "extreme deprivation." *See Jones*, 2015 WL 5750136, at *14 (citing cases). As for the main cell lights (two 32-watt fluorescent bulbs), Plaintiff avers that those lights were also frequently on at night and were controlled by the officers in the control post. However, this allegation is directly

---

[2]  While this decision does hold weight in the Court's determination here, Defendant does overstate *Hamilton*, as the court there made its determination based on the specific facts and evidence provided by the inmate in that case. The Court can imagine an inmate being successful on their claim if they adequately establish a deprivation under the Eighth Amendment. *See Jones*, 2013 WL 4804500, *10 ("Requiring inmates to live in constant illumination can ..., under certain circumstances, rise to the level of an Eighth Amendment violation"). For the reasons discussed hereto, however, Plaintiff fails to do so.

contradicted by Defendant Smith's declaration, Defendant Smith's witness affidavits, the facility's contemporaneous response to the Grievance, and Plaintiff's own witnesses, three of whom stated in their depositions that the main lights in the cell were controlled from inside each cell and not by the control post.  (*See, e.g.*, Def. 56.1 ¶ 12; Shulman Decl., Exh. D.; Ebert Decl. ¶ 13; Farah Decl. ¶ 7; Smith Decl. ¶ 10–11; Pl's Exh. I. (Deposition of Jeffrey Francis), Tr. at 22:11–22:14 (stating that lights in the cell "weren't on. Those we control.")); Pl.'s Exh. J. (Deposition of Joseph Killimayer), Tr. at 23:5–23:25); Pl.'s Exh. K. (Deposition of Steven Marshall), Tr. at 44:10–12 ("No, I turned my lights off"). Therefore, the Court finds that no reasonable fact finder would credit Plaintiff's unsupported assertion that the main cell lights were constantly on and controlled by the officers in the cell post.

### Duration of Exposure

Third, the Court considers Plaintiff's duration of exposure.  Plaintiff was in the Shawangunk SHU for around 49 days.   (Pl.'s Dep. Tr. at 32:2–11, 56:15–17.)  While this time frame is construed by Defendant Smith as being short, "[t]he relatively short duration that plaintiff was exposed to the uncomfortable illumination does not, on its face, compel summary judgment in favor of [Defendant]."  *Jones*, 2015 WL 5750136, at *14 (inmate stayed in SHU for 48 days).

### Objectively Serious Harm

Finally, and most importantly, the Court assesses the extent of serious harm that the Plaintiff experienced because of the constant lighting while he was in the SHU.  Here, Plaintiff does not allege any objectively serious harm, only that the lights made it hard to sleep and that he suffered sleep deprivation.[3]  (Compl. ¶ 75; *id*. at Exh. H (Plaintiff's Grievance Letter) (stating

---

[3]     While Plaintiff alleges that the "suffered sleep deprivation akin to torture and extreme interrogation tactics," the Court cannot, without more, accept such conclusory statements.  (Compl. ¶ 75.) *See Johnson v. City of New York*, No. 15cv403, 2016 WL 7335663, at *2 (S.D.N.Y. Dec. 16, 2016) ("A *pro se* litigant's bald assertion, completely

"Lights in the SHU are always on and these lights are particularly bright and make it hard to sleep at night.")).

This allegation, without more, has been found to be insufficient to establish an Eighth Amendment violation. *See Jones*, 2015 WL 5750136, at *14 ("[i]n order to succeed on a claim of illegal illumination, plaintiff must produce evidence that the constant illumination had harmful effects on his health beyond mere discomfort."); *id*. (granting summary judgment because "[p]laintiff does not allege any health effects resulting from the alleged sleep deprivation that would rise to the severity necessary to trigger Eighth Amendment concerns.  Instead, plaintiff only claims that he was unable to get a full night's sleep."); *see also Huertas v. Secretary Pennsylvania Dept. of Corrections*, 533 F. App'x. 64, 68 & n.7 (3rd Cir. 2013) (upholding dismissal of Eighth Amendment claim on summary judgment because plaintiff had not provided competent medical evidence to show that he suffered serious psychological harm and eye problems because of the continuous lighting in the restricted housing unit);  *Quick v. Graham*, No. 912CV1717DNHATB, 2016 WL 873853, at *7 (N.D.N.Y. Jan. 8, 2016), *report and recommendation adopted*, No. 9:12-CV-1717, 2016 WL 879310 (N.D.N.Y. Mar. 7, 2016), *vacated* (Mar. 7, 2016), *and report and recommendation adopted*, No. 912CV1717DNHATB, 2016 WL 1261107 (N.D.N.Y. Mar. 30, 2016) (granting summary judgment because "plaintiff's conclusory and often inconsistent descriptions of the harm he allegedly suffered as a result of the lighting conditions in the [SHU] were not supported"); *but see, c.f. Abreu v. Farley*, No. 6:11-CV-06251 EAW, 2019 WL 1230778, at *20 (W.D.N.Y. Mar. 15, 2019) (denying summary judgment motion where plaintiff alleged that he suffered periods of 24-hour illumination of his prison cell, which resulted in headaches, eye problems, depression, and the inability "to sleep for close to two weeks"); *Brandon v. Royce*, No.

---

unsupported by evidence is not sufficient to overcome a motion for summary judgment.") (internal quotation marks and citations omitted).

16 CV 5552 (VB), 2019 WL 1227804, at *8–9 (S.D.N.Y. Mar. 15, 2019) (denying summary judgment where plaintiff asserted he suffered from "migraine headaches, dizziness, and excessive fatigue, among other symptoms" because of constant illumination).

In his Second Amended Complaint and his deposition, Plaintiff avers that as a result of being in the SHU, he experienced "lethargy, headaches, depression, paranoia, overall nihilistic deterministic, pessimistic, [and a] cynical view of the world."  (Pl.'s Dep. Tr. at 97:2–98:18; Compl. ¶ 85).  But as Plaintiff stated in his deposition, he cannot identify any specific harm he experienced because of the lighting in the SHU, and the harm he articulates pertains to his overall experience in the SHU. [4]  (Pl.'s Dep. Tr. at 100:2–102:5.)  *See Collins v. Fischer*, No. 15-CV-103 (KMK), 2018 WL 1626528, at *6 (S.D.N.Y. Mar. 30, 2018) (dismissing Eighth Amendment claim because, *inter alia*, "while Plaintiff seeks damages for 'pain, suffering, degradation, and mental anguish,' . . .  he does not connect any injuries specifically to the illumination.").

In addition, Plaintiff states in his deposition that he does not recall seeking medical treatment, and when asked why, he explained it was because he was "focused on other things." (Pl.'s Dep. Tr. at 102:10–102:12.)  He also testified in his deposition that he did not seek treatment for insomnia.  (Pl.'s Dep. Tr.102:19–102:20.)  Moreover, Plaintiff admits in his declaration that though "I suffered injuries from my experienced [sic]," "I think some of my injuries are difficult to quantify and ascertain."  (Pl.'s Decl. ¶ 14.)

Plaintiff's inability to ascertain an injury and the lack of objective support indicating he suffered an injury undermines Plaintiff's assertion that he experienced a harm due to constant

---

[4]      Plaintiff previously raised numerous other claims pertaining to his experience in the SHU, all of which have been dismissed by the Court in its August 31, 2018 order. (*See* ECF No. 48.)  The Court, *inter alia*, dismissed Plaintiff's claims for retaliation, deprivation of his religious diet, inadequate clothing, the length of his time in SHU, and lost property because Plaintiff failed to fully exhaust his administrative remedies" (*id.* at 14) and dismissed Plaintiff's Fourteenth Amendment due process violation claims (*id.* at 21–24).

lighting in the SHU that amounts to an Eighth Amendment violation.  *See, e.g., McGee*, 2010 WL 5300805, at *5–8 (plaintiffs' speculative and conclusory evidence fails to show that constant lighting, and any resulting loss of sleep, has been a cause of their injuries; without such a showing, there is no genuine issue of material fact on the question of whether continuous lighting has created a condition of confinement so extreme as to be unconstitutional) (collecting cases); *Wills v. Terhune*, 404 F. Supp. 2d 1226, 1230–31  (E.D. Cal. 2005) (lighting did not constitute cruel and unusual punishment in absence of evidence of "grave sleeping problems" or other harm).

Taking these factors together, the Court finds that Plaintiff fails to establish the objective element for his Eighth Amendment claim based on the continual lighting in the SHU.

## 2.  Subjective Element

Even if Plaintiff established the objective element of his Eighth Amendment claim based on the 24-hour lighting in the SHU, Plaintiff nonetheless fails to establish Defendant Smith's deliberate indifference, and therefore fails on the subjective element of his Eighth Amendment claim.

Regarding the lights in the SHU gallery, Defendant Smith explicitly acknowledges that he was aware that those lights were consistently on, and that inmates had complained about them in the past.  (Smith Decl. ¶¶ 6, 7.)  However, the Court agrees with Defendant Smith that he did not act with deliberate indifference with respect to the gallery lights because the lights remained on for security reasons pursuant to facility policy and Defendant Smith was aware of the court's decision in *Hamilton*, to which he was a defendant, and which found that the gallery lights in the Shawangunk SHU did not violate Eighth Amendment rights because, *inter alia*, they were kept on pursuant to a valid penological interest. (Def.'s Opp. at 12; Smith Decl. ¶ 8.)  *See Chavarria v. Stacks*, 102 F. App'x 433, 436 (5th Cir.2004) (plaintiff cannot establish the subjective element of

an Eighth Amendment violation because he cannot show that his deprivation is unnecessary and wanton, given the security-related justification for the lighting policy in the administrative segregation area).

Plaintiff also fails to establish that Defendant Smith was deliberately indifferent with respect to the lights inside his SHU cell.  Plaintiff fails to offer any evidence that he complained about the lights within the cell to Defendant Smith, or that any other incarcerated individual did so.  On the contrary, Plaintiff's Grievance Letter states "[t]he lights in the SHU are always on," but does not refer specifically to the lights within his cell unit.  (*See* Grievance Letter).  In any event, Plaintiff filed his Grievance Letter the day before he left the Shawangunk SHU and was transferred out of the facility, and Defendant Smith did not receive the Grievance Letter until a few weeks after Plaintiff left the SHU.  (Pl. Dep. at 56, 71; Smith Dec. ¶ 14.)  Therefore, Plaintiff fails to establish that Defendant Smith was aware and had personal involvement regarding lighting issues within his cell, as is required to establish deliberate indifference.  *See Quick v. Graham*, No. 9:12-CV-1717 DNH/ATB, 2014 WL 4627108, at *10 (N.D.N.Y. Sept. 11, 2014) (Superintendent not personally involved in plaintiff's grievance when it was not submitted until after plaintiff's initial stay at SHU).

Plaintiff also asserts in his declaration that he "spoke directly to the Superintendent, Defendant Smith, about the excessive sound and lights [sic] conditions but nothing was done about it." (Pl.'s Decl. ¶ 7.)  However, that assertion, without any additional corroborating support, is too conclusory at this stage.  *See Demosthene v. City of New York*, 831 F. App'x 530, 534 (2d Cir. 2020)).

Moreover, as previously discussed, none of Plaintiff's supporting witness affidavits or depositions identified problems specifically with the lights within their cell units, and instead, three

witnesses denied having issues with their cell lights during their depositions.  *See* Pl's Exh. I. (Deposition of Jeffrey Francis), Tr. at 22:11–22:14; Pl.'s Exh. J. (Deposition of Joseph Killimayer), Tr. at 23:5–23:25); Pl.'s Exh. K. (Deposition of Steven Marshall), Tr. at 44:10–44:12).  Defendant Smith avers that the main light fixtures in the cell "were controlled exclusively from inside the cell," and that "[i]f an inmate had complained to me about staff harassing inmates by leaving the night lights on in the SHU cells for too long, I would have referred the matter to a subordinate to investigate."  (*Id*. ¶ 13.).  The Court finds that Defendant Smith can rely on the fact that the facility had a policy requiring staff to turn on night lights only if and so long as necessary to conduct legitimate investigations (Smith Decl. ¶ 12; Eber Decl. ¶ 13), and Plaintiff fails to otherwise adduce facts that Defendant Smith was aware of or recklessly disregarded that his staff was acting contrary to that policy.  *Tangreti*, 983 F.3d at 619 (no deliberate indifference where undisputed pretrial record showed no evidence that supervisor made an inference that subordinates were engaging in abuse of inmates).

## B.  Excessive Noise

Plaintiff also seeks to establish an Eighth Amendment claim based on the noise caused by the heavy metal door between the SHU and the medical unit, which Plaintiff claims was "frequently slammed," "[e]ither in malice or inadvertently."  (Pl.'s Decl. ¶ 12.)  Plaintiff elaborates that "I could not sleep because [the staff members] would [use] that door at least every hour" (*id*.) and that "[t]he sound of the release was loud and sharp clicking sound that keep me and neighbors awake [sic]."  (*Id*. ¶ 13.)  Plaintiff, moreover, states that even though Defendant Smith claims he does not recall inmates complaining about the heavy metal door (*see* Smith Decl. ¶ 18), he should have been aware because of his "uncommon longevity there as superintendent."  (Pl.'s Opp. at 2.) (*see also* Smith Decl. ¶ 2 (Defendant Smith states that he was Superintendent of Shawangunk from

21

2002 until 2016)).  Plaintiff also argues that Defendant Smith in fact did receive such complaints from inmates and negligently and repeatedly ignored those complaints.  (Pl.'s Opp. at 4.)

Defendant Smith, on the other hand, argues that the "incidental noise in the prison setting, while it may be annoying, does not rise to the level of a risk to health and safety that satisfies the objective element of the Eighth Amendment test."  (Def.'s Br. at 15.)  *See also Phillips v. Roy*, No. 08-CV-87806-B-3437, 2011 WL 3847265, at *15 (N.D.N.Y. Aug. 29, 2011) ("Plaintiff's allegation that Defendants failed to fix malfunctioning water pipes, resulting in noise which interrupted his sleep, fails to meet the objective element of an Eighth Amendment inquiry."). Defendant Smith also asserts that Plaintiff cannot demonstrate deliberate indifference because Defendant Smith offers evidence that the heavy metal door was necessary to maintain security and that its use was restricted at night.  (Def.'s Br. at 17.)  Defendant Smith adds that, in any event, Plaintiff failed to show Defendant's actual awareness of any unauthorized use of the door, that the door was not properly functioning, or that noise was not being appropriately minimized.

For the reasons stated below, Plaintiff fails to establish an Eighth Amendment claim based on the noises caused by the heavy metal door to the medical unit.

## 1. Objective Element

Like his Eighth Amendment claim based on continuous lighting at the SHU, Plaintiff's Eighth Amendment claim based on the noise caused by the heavy metal door ultimately fails because Plaintiff fails to establish that he experienced an objectively serious harm.  As discussed, Plaintiff does not recall seeking medical treatment, including any treatment for insomnia, because he was "focused on other things."  (Pl.'s Dep. at Tr: 102:9–102:20.)  Plaintiff states that though "I suffered injuries from my experienced [sic]," "I think some of my injuries are difficult to quantify and ascertain."  (Pl.'s Decl. ¶ 14.)  In addition, when asked whether the sound from the heavy

22

metal door awakened him, Plaintiff responded "in the beginning a lot but I guess the body is adaptable . . . I can't say exactly how much time it took to get used to it, but…depending on who [] operated it . . .")  (Pl.'s Dep. Tr. at 45:19–46:2.).

Because Plaintiff fails to establish that he suffered an objectively serious harm, Plaintiff cannot establish the objective element of his Eighth Amendment claim based on the noise he endured while in the SHU.  *See Griffin v. Coughlin*, 743 F. Supp. 1006, 1018 (N.D.N.Y. 1990) (dismissing noise claim because "plaintiffs presented no evidence that the noise level at [facility] causes physical damage."); *Youmans v. Schriro*, No. 12 CIV. 3690 PAE JCF, 2013 WL 6284422, at *5 n.3 (S.D.N.Y. Dec. 3, 2013) ("[Plaintiff] alleges conditions that may "interfere" with sleep, rather than conditions that violate his constitutional rights."); *Phelan v. Durniak*, No. 9:10-CV-666 FJS/RFT, 2014 WL 4759937, at *10 (N.D.N.Y. Sept. 24, 2014) ("Plaintiff has failed to identify an objectively serious risk to his health or safety. Essentially, Plaintiff complains that the noise from the television on Friday and Saturday nights made it difficult for him to fall asleep before 2:00 a.m. on those days. However, aside from his conclusory allegation that this noise aggravated his pre-existing migraine condition, it did not affect his health or safety in any appreciable way.").

### 2.  Subjective Element

In order to establish the subjective element for an Eighth Amendment claim based on excessive noise, Plaintiff must establish that Defendant Smith acted with "with deliberate indifference to inmate health or safety." *Holmes v. Grant*, No. 03 CIV. 3426 RJH RLE, 2006 WL 851753, at *11 (S.D.N.Y. Mar. 31, 2006).  In addition, Plaintiff must also establish that Defendant Smith had personal involvement in the alleged constitutional deprivation.  *See Brandon v. Royce*, No. 16 CV 5552 (VB), 2019 WL 1227804, at *9 (S.D.N.Y. Mar. 15, 2019).

Plaintiff's argument that Defendant Smith should be held responsible by virtue of his supervisory capacity over staff members fails under established case law barring *respondeat superior* liability in Section 1983 cases.  *See Wright v. Smith*, 21 F.3d 496, 501 (2d Cir.1994); *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir.2003); *Spavone v. N.Y. State Dep't of Corr. Servs*., 719 F.3d 127, 135 (2d Cir. 2013) ("It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.") (internal citation omitted).

Plaintiff also attempts to argue that Defendant Smith had personal involvement because he received numerous noise complaints over the years but failed to act upon them.  (Pl.'s Opp. at 4.) When evaluating whether a supervisor had personally involvement based on failure to remedy a wrong after being informed of the violation through a report or appeal, "courts examine the degree of response to plaintiff's complaints."  *Brandon v. Royce*, No. 16 CV 5552 (VB), 2019 WL 1227804, at *10 (S.D.N.Y. Mar. 15, 2019).  "[D]istrict courts have found personal involvement based on denying a grievance where (1) the official undertakes some kind of investigation into the initial denial; (2) the official provides a detailed and specific response to the grievance rather than a pro forma denial; or (3) the grievance involves an ongoing violation 'such that the supervisory official who reviews the grievance can remedy it directly.'"  *Id*. (quoting *Quick v. Graham*, 2014 WL 4627108, at *11).

Defendant Smith states that he was not aware that the door to the medical unit was heavily trafficked or that staff slammed the door to antagonize incarcerated individuals, which he states would have been contrary to security policy.  (*Id*. ¶¶ 18–19.)  Defendant Smith, however, does acknowledge that he rendered Superintendent decisions in 2011 and 2012 to noise grievances pertaining to the heavy metal door, but that he did so in the course of the inmate grievance process,

24

and that "[i]n making Superintendent's decisions on those grievances, I would have relied on representations of staff." (*Id.* ¶ 19.)   Defendant Smith does not specify how many of those grievances exist nor their exact content, particularly whether any of them complained about nonauthorized use of the door or about it being slammed to antagonize inmates.  Copies of those grievances are not before the Court, but giving the Plaintiff the benefit of all rational inferences, particularly as a *pro se* Plaintiff, there may well be a disputed issue of material fact with respect to the subjective element.[5]

Nonetheless, because Plaintiff fails to establish the objective element, as stated above, the Eighth Amendment claim based on excessive noise from the heavy metal door ultimately fails as well.

### C.  Qualified Immunity

Lastly, Defendant Smith argues that, even if Plaintiff's Eight Amendment claims were to survive summary judgment, Defendant is entitled to qualified immunity.  (Def. Br. at 19–21.)

"Qualified immunity shields government officials from liability for civil damages as a result of their performance of discretionary functions, and serves to protect government officials from the burdens of costly, but insubstantial, lawsuits."  *Lennon v. Miller*, 66 F.3d 416, 420 (2d Cir. 1995).  Government actors performing discretionary functions are "shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Id.* (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738 (1982)).  The immunity protects a government

---

[5]     Plaintiff's own Grievance complained that staff "keep slamming the door right next to my cell to antagonize the inmates."  (*See* Grievance Letter).  However, Defendant Smith became aware of the Grievance after Plaintiff left the Shawangunk SHU, and therefore could not have addressed the issue for Plaintiff at that point.  (*See* Grievance Letter.)  *See Quick v. Graham,* 2014 WL 4627108, at *10 (no personal involvement by defendant superintendent when grievance was submitted after plaintiff transferred out of SHU).

actor if it was "objectively reasonable" for him to believe that his actions were lawful at the time of the challenged act." *Id*. (quoting *Anderson v. Creighton*, 483 U.S. 635, 641 107 S. Ct. 3034, 3039 97 L.Ed. 2d 523, 640 (1987)).  "The objective reasonableness test is met—and the defendant is entitled to immunity—if 'officers of reasonable competence could disagree' on the legality of the defendant's actions." *Id*. (quoting *Malley v. Briggs*, 475 U.S. 335, 340–41 106 S. Ct. 1092, 1096 89 L.Ed. 2d 271 (1986)).  Even if the constitutional privileges are clearly established, a government actor may still be shielded by qualified immunity "if it was objectively reasonable for the public official to believe that his acts did not violate those rights." *Kaminsky v. Rosenblum*, 929 F.2d 922, 925 (2d Cir.1991).

Because Plaintiff fails to establish a constitutional violation, the Court need not address Defendant Smith's qualified immunity defense.  *See Montanez v. Lee*, No. 14-CV-3205 (NSR), 2019 WL 1409451, at *4 n.2 (S.D.N.Y. Mar. 28, 2019) (where Plaintiff's claims are dismissed for failure to establish a claim, "the Court does not address the remaining qualified immunity.").

## CONCLUSION

For the aforementioned reasons, Plaintiff's Motion for Default Judgment is DENIED. Defendant Joseph Smith's Motion for Summary Judgment is GRANTED in its entirety, and all claims in this action are DISMISSED against ALL Defendants.[6]

The Clerk of Court is respectfully directed to terminate the motion at ECF Nos. 142, 143, and 155, to terminate the case and all Defendants, and to enter judgment in favor of Defendant

---

[6]       As Defendant Smith explains in his opening brief, the Court had dismissed all other Defendants from this case, but as a result of Plaintiff's filing of his Second Amended Complaint, the previously dismissed Defendants were added back to the docket sheet. (Def.'s Br. at 5–6 n.2).  The Court subsequently denied Plaintiff's motion to reconsider its motion to dismiss decision, and therefore denied Plaintiff's motion to restore the dismissed claims and defendants Cassel, Wright, Laporto, Keysor, Capra, Prack, and Rock. (ECF No. 139.)  For this reason, Court kindly directs the Clerk of the Court to terminate all Defendants from the docket.

Smith.  The Clerk of the Court is respectfully directed to mail a copy of this Opinion and Order to

Plaintiff at his address listed on ECF and show mailing on the docket.

Dated:   September 26, 2022                                    SO ORDERED:
         White Plains, New York

                                                    _____
                                                         NELSON S. ROMÁN
                                                    United States District Judge